[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 440.]

THE STATE OF OHIO, APPELLEE, *v.* MUNCIE, APPELLANT.

[Cite as *State v. Muncie*, 2001-Ohio-93.]

*Appellate procedure—Final orders—R.C. 2505.02(A)(3) and (B)(4), construed—*
*Criminal procedure—Petition for forced medication under R.C. 2945.38*
*is a "provisional remedy" ancillary to the criminal action against an*
*incompetent defendant—Trial court's order to forcibly medicate an*
*incompetent defendant with psychotropic drugs in an effort to restore the*
*defendant to competency is a final and appealable order.*

(No. 00-942—Submitted February 6, 2001—Decided May 23, 2001.)

APPEAL from the Court of Appeals for Clermont County, No. CA99-07-076.

———————————

SYLLABUS OF THE COURT

1. A petition for forced medication under R.C. 2945.38 is a "provisional remedy" ancillary to the criminal action undertaken by the state against an incompetent defendant. (R.C. 2505.02[A][3], construed.)

2. When a trial court orders an incompetent defendant to be forcibly medicated with psychotropic drugs in an effort to restore the defendant to competency, that order is final and appealable. (R.C. 2505.02[B][4], construed.)

———————————

COOK, J.

{¶ 1} The court of appeals in this case determined that it lacked jurisdiction to review a "Forced Medication Order" that had been issued by the trial court in an effort to restore appellant's competency to stand trial. The court of appeals dismissed appellant's appeal from that order, deciding that it was not final and appealable under R.C. 2505.02. Because we hold that the trial court's forced medication order was indeed a "final order" under R.C. 2505.02(B)(4), we reverse.

## I. Background

{¶ 2} After allegedly mailing a threatening letter to a Clermont County Municipal Court judge, appellant Donald Muncie was arrested and indicted for retaliation in violation of R.C. 2921.05(A). The trial court held a competency hearing on June 10, 1999. In an amended entry filed June 28, 1999, the trial court found Muncie incompetent to stand trial and committed him to the Twin Valley Psychiatric Center ("Twin Valley") in Montgomery County for restorative treatment. In a later entry, the trial court indicated that it had issued this commitment order under R.C. 2945.38.[1]

{¶ 3} Craig L. Ross, Jr., the Legal Assurance Administrator at Twin Valley, wrote a letter to the trial court dated July 12, 1999, requesting permission to forcibly medicate Muncie. In this letter, Ross stated that Muncie had not cooperated with treatment efforts at Twin Valley and was refusing to take his prescribed medication. Ross indicated that, according to Muncie's treating psychiatrist, Muncie could be restored to competency if he received five to thirty milligrams of Olanzapine per day, eight to sixty-four milligrams of Trilafon per day, one to ten milligrams of Ativan per day, and two hundred fifty to four thousand milligrams of Depakote per day. According to *amicus curiae* Glenn Weaver Institute of Law and Psychiatry

---

1. At the time the trial court committed Muncie, R.C. 2945.38(B) provided: "After taking into consideration all relevant reports, information, and other evidence, the court shall order a defendant who is found incompetent to stand trial to undergo treatment at a facility operated by the department of mental health or the department of mental retardation and developmental disabilities, treatment at a facility certified by either of those departments as being qualified to treat mental illness or mental retardation, treatment at a public or private community mental health or mental retardation facility, or private treatment by a psychiatrist or another mental health or mental retardation professional. The order may restrict the defendant's freedom of movement as the court considers necessary." 146 Ohio Laws, Part VI, 11192-11193. This court recently declared R.C. 2945.38, as amended by Am.Sub.S.B. No. 285, unconstitutional *in toto*. See *State v. Sullivan* (2001), 90 Ohio St.3d 502, 739 N.E.2d 788, syllabus. The statute now in place after this court's decision in *Sullivan* requires the trial court, before ordering an incompetent defendant committed for restorative treatment, to make a finding based on the evidence "as to whether there was a substantial probability that, with treatment, the defendant would become competent to stand trial within one year." *Id.* at 504-505, 739 N.E.2d at 791, citing former R.C. 2945.38(C), 146 Ohio Laws, Part VI, 10976-10977.

("Glenn Weaver"), Olanzapine and Trilafon are antipsychotic drugs, Ativan is a sedative used to treat anxiety and insomnia, and Depakote is an anticonvulsant used to control manic episodes associated with bipolar disorder. The state does not dispute these characterizations of the drugs, which are supported by excerpts from the Physician Desk Reference that Muncie attached as an exhibit to a supplemental filing in the trial court.

{¶ 4} Two days after receiving Ross's petition for forced medication, the trial court entered a "Forced Medication Order." In this order, the court found that "it is in the best interest of the Defendant, based upon the recommendation of his treating psychiatrist, to be administered, forcibly if necessary," the four drugs listed in Ross's July 12 letter.[2] The court also authorized Twin Valley personnel to forcibly medicate Muncie with any drugs necessary to ameliorate deleterious side effects resulting from the administration of the four specified drugs. The court mailed its forced medication order to the parties' attorneys, attaching a letter from the court dated July 14, 1999. In this letter, the trial judge indicated to counsel that he had consulted with Ross at Twin Valley before issuing the forced medication

---

2. At the time the trial court issued its forced medication order in this case, R.C. 2945.38(B) provided: "If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital or facility, the managing officer of the institution, the director of the program, or the person to which the defendant is committed determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer, managing officer, director, or person to which the defendant is committed may petition for, and *the court may authorize, the involuntary administration of medication*." (Emphasis added.). 146 Ohio Laws, Part VI, 11193. As noted in footnote 1, *supra,* this court recently declared this version of R.C. 2945.38 unconstitutional *in toto*. See *Sullivan*, 90 Ohio St.3d 502, 739 N.E.2d 788, syllabus. The commitment statute now in place after *Sullivan*, though it expressly *authorizes* the *continued* administration of psychotropic medication to *competent* defendants, does not contain the explicit provision for *involuntary* administration of such medication to *incompetent* defendants just quoted from former R.C. 2945.38(B). R.C. 2945.38(F), 146 Ohio Laws, Part VI, 10978.. Because the question is not squarely before us, and because the answer to the question is unnecessary to resolve the narrow procedural issue presented in this appeal, we decline to decide whether the statutory commitment provisions now in place after *Sullivan* authorize the involuntary administration of psychotropic medication to incompetent defendants.

order and that Ross had confirmed the court's belief that no hearing was required prior to issuing the order.

{¶ 5} On July 16, Muncie filed a "Motion to Reconsider Order for Forced Medication" in the common pleas court. In this motion, Muncie requested that the court stay its forced medication order pending appeal, should his motion for reconsideration be overruled. The trial court overruled Muncie's motion for reconsideration and motion for stay. On July 28, Muncie appealed to the Clermont County Court of Appeals.

{¶ 6} Muncie filed a motion requesting the court of appeals to stay the trial court's forced medication order pending appeal. The state filed objections to this motion and moved to dismiss Muncie's appeal for lack of a final appealable order. The court of appeals denied both Muncie's requested stay and the state's motion to dismiss. The court of appeals declined to dismiss Muncie's appeal for lack of jurisdiction at that juncture, but permitted the state to raise the issue of appealability again in its merit brief.

{¶ 7} On January 11, 2000, after the parties had filed their merit briefs in the court of appeals, the trial court found Muncie competent to stand trial. The trial court ordered Muncie to remain hospitalized until trial and to continue taking his medication. On February 2, Muncie entered a plea of no contest to the charge of retaliation. On February 10, 2000, the trial court sentenced Muncie to five years of community control. As components of this sentence, the trial court ordered Muncie to complete the Tender Mercies Residential Program and to take all medications as directed by his physician.

{¶ 8} On April 4, 2000, the court of appeals unanimously dismissed Muncie's appeal for lack of a final appealable order. The court of appeals observed that the trial court's forced medication order, issued without a hearing, raised significant due process concerns. Even so, the court of appeals concluded that the forced medication order was not a final order for purposes of R.C. 2505.02(B), and

that it lacked jurisdiction "to legally resolve the important constitutional arguments in appellant's appeal."

{¶ 9} On September 20, 2000, this court allowed Muncie's discretionary appeal, but only as to Muncie's first proposition of law—to determine whether an order authorizing the forced medication of an incompetent defendant is a final appealable order. *State v. Muncie* (2000), 90 Ohio St.3d 1417, 735 N.E.2d 456.[3]

## II. Analysis

{¶ 10} R.C. 2953.02 authorizes appellate courts to review, in criminal cases, "the judgment or final order" of an inferior court. This court has previously determined that, in order to decide whether an order issued by a trial court in a criminal proceeding is a reviewable final order, appellate courts should apply the definitions of "final order" contained in R.C. 2505.02. See *State ex rel. Leis v. Kraft* (1984), 10 Ohio St.3d 34, 36, 10 OBR 237, 239, 460 N.E.2d 1372, 1374. In 1997, this court invited the General Assembly to consider modifying R.C. 2505.02. See *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 122-123, 676 N.E.2d 890, 894, fn. 2. The following year, the General Assembly amended the statute. See Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277-3278. Applying our precedent and amended R.C. 2505.02, the Clermont County Court of Appeals decided that the forced medication order issued by the trial court in this case was not a final and appealable order. For the reasons that follow, we disagree.

---

3. The second, third, and fourth propositions of law contained in Muncie's Memorandum in Support of Jurisdiction asserted facial and as-applied constitutional challenges to the version of R.C. 2945.38 that this court struck down *in toto* in *State v. Sullivan, supra*.

*State v. Hunt*

**{¶ 11}** The court of appeals noted that, in *State v. Hunt* (1976), 47 Ohio St.2d 170, 1 O.O.3d 99, 351 N.E.2d 106, syllabus, this court held that an order finding a defendant incompetent and committing him to a state hospital under R.C. 2945.38 was not a final appealable order. Without elaboration, the court of appeals decided: "If a finding of competence or incompetence is not a final appealable order, it logically follows that an order of forced medication in an attempt to restore competency is not a final appealable order."

**{¶ 12}** We are unpersuaded by the court of appeals' analogy to *Hunt*. A commitment order and forced medication order are superficially similar, in that both orders arise from proceedings under R.C. 2945.38 and implicate an incompetent defendant's liberty interest and right to due process of law. See *Lagway v. Dallman* (N.D.Ohio 1992), 806 F.Supp. 1322, 1332-1333 (noting that R.C. 2945.37 and 2945.38 "create an expectation protected by the Due Process Clause"); see, also, *Riggins v. Nevada* (1992), 504 U.S. 127, 133-134, 112 S.Ct. 1810, 1814, 118 L.Ed.2d 479, 488 (citing *Washington v. Harper* [1990], 494 U.S. 210, 229, 110 S.Ct. 1028, 1041, 108 L.Ed.2d 178, 203, for the proposition that an individual's interest in avoiding the involuntary administration of antipsychotic drugs is protected under the Due Process Clause of the Fourteenth Amendment).

**{¶ 13}** But the commitment order issued by the trial court in *Hunt* merely directed authorities to transfer Hunt—an illiterate individual who suffered from hearing and speech impairments—to an institution where his communication skills could be improved. *Hunt*, 47 Ohio St.2d at 171, 1 O.O.3d at 99, 351 N.E.2d at 107. Orders of forced medication, however, do not necessarily follow from orders of commitment and are designed to do far more than merely restrict an incompetent defendant's freedom of movement. The United States Supreme Court has noted that the forcible injection of antipsychotic medications into a nonconsenting individual's body represents a "particularly severe" interference with the interests

6

protected by the Due Process Clause. *Riggins*, 504 U.S. at 134, 112 S.Ct. at 1814, 118 L.Ed.2d at 488. Orders authorizing the involuntary administration of antipsychotic medications permit authorities to alter the cognitive processes occurring in the committed defendant's brain, against his or her will, using drugs that carry with them the possibility of severe, debilitating, and/or permanent side effects. *Id.* at 134, 112 S.Ct. at 1814-1815, 118 L.Ed.2d at 488-489; see, also, *Steele v. Hamilton Cty. Community Mental Health Bd.* (2000), 90 Ohio St.3d 176, 181-182, 736 N.E.2d 10, 16 (noting that possible side effects of antipsychotic drugs include Parkinsonian syndrome, akathisia, dystonia, and dyskinesia).[4] Thus, even if we were to assume for the sake of argument that our decision in *Hunt* retains any viability following the General Assembly's amendments to R.C. 2505.02—an issue that we are not now called upon to decide—we would decline to adopt the court of appeals' direct analogy to that distinguishable case.

*Amended R.C. 2505.02(B)*

{¶ 14} The court of appeals correctly noted that our decision in *Hunt* predated the General Assembly's recent amendments to R.C. 2505.02. Accordingly, the court of appeals went on to determine whether the trial court's forced medication order met any of the five definitions of "final order" in amended R.C. 2505.02(B). That section now provides:

"An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

"(3) An order that vacates or sets aside a judgment or grants a new trial;

---

4. For a description of the symptoms associated with these conditions, see *Steele,* 90 Ohio St.3d at 182-183, 736 N.E.2d at 17.

"(4) An order that grants or denies a provisional remedy and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

"(5) An order that determines that an action may or may not be maintained as a class action."

{¶ 15} The court of appeals held that the forced medication order issued by the trial court in this case did not satisfy any of R.C. 2505.02(B)'s five definitions of "final order." In their arguments to this court, Muncie and *amicus curiae* Glenn Weaver dispute that holding only as to one of the statute's five definitions. They maintain that the trial court's forced medication order was indeed a final order under R.C. 2505.02(B)(4). We agree, and limit the analysis that follows to the definition of "final order" contained in R.C. 2505.02(B)(4).[5]

*R.C. 2505.02(B)(4)—A Three-Step Analysis*

{¶ 16} As noted above, R.C. 2505.02(B)(4) now provides that an order is a "final order" if it satisfies each part of a three-part test: (1) the order must either grant or deny relief sought in a certain type of proceeding—a proceeding that the General Assembly calls a "provisional remedy," (2) the order must both determine the action with respect to the provisional remedy and prevent a judgment in favor of the appealing party with respect to the provisional remedy, and (3) the reviewing court must decide that the party appealing from the order would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all

---

5. Accordingly, we expressly decline to pass on the court of appeals' interpretation of the other four definitions of "final order" that are contained in R.C. 2505.02(B).

proceedings, issues, claims, and parties in the action. See, also, R.C. 2505.02(A)(3) (defining "provisional remedy").

{¶ 17} Neither R.C. 2505.02(B)(4)'s three-part test nor the defined term "provisional remedy" appeared in R.C. 2505.02 prior to the 1998 amendments. See Sub.H.B. No. 394, 147 Ohio Laws Part II, 3277-3278. This court has not yet issued an opinion applying these provisions.[6] In this, our first opinion to apply the General Assembly's newly defined category of final orders, we begin with the axiomatic principle that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation. *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057, 1061, citing *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161. "Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent." *Meeks* at 190, 16 O.O.3d at 214, 404 N.E.2d at 162. If

---

6. R.C. 2505.02(B)(4) has appeared in only three decisions by this court thus far. See *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 744 N.E.2d 154; *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901; *State v. Coffman* (2001), 91 Ohio St.3d 125, 742 N.E.2d 644. *Boone* concerned an appeal from an order compelling production of certain documents following an *in camera* inspection. The *Boone* majority stated, "While the issue was apparently not raised by appellant either in the court of appeals or in this court, we note in passing, and without deciding, that there could be a question of whether this case, involving solely a discovery issue, met the requirements for a final appealable order as set forth in R.C. 2505.02(B)(4) and, in particular, (B)(4)(b)." *Boone*, 91 Ohio St.3d at 211, 744 N.E.2d at 156, fn. 5. In *Stevens*, R.C. 2505.02(B)(4) appeared in this court's recitation of that case's procedural history, for one of the parties in that case had argued that this subsection gave the court of appeals jurisdiction over an order denying a political subdivision's alleged immunity under R.C. Chapter 2744. *Id.,* 91 Ohio St.3d at 184, 743 N.E.2d at 903. The *Stevens* majority did not analyze R.C. 2505.02(B)(4), for that opinion focused on subsection (B)(2). See *id.* at 186-190, 743 N.E.2d at 905-907. After concluding that subsection (B)(2) did not confer jurisdiction on the court of appeals, however, the *Stevens* majority also found that "no other provision in R.C. 2505.02(B) supports the appeal." *Id.* at 190, 743 N.E.2d at 907. Finally, in *Coffman*, this court held that "[a] trial court's order denying shock probation pursuant to former R.C. 2947.061(B) is not a final appealable order." *Id.* at the syllabus. R.C. 2505.02(B)(4) was not analyzed in the majority opinion, but three dissenting justices asserted that the denial of a motion for shock probation should be deemed final and appealable under R.C. 2505.02(B)(4). See *id.* at 130, 742 N.E.2d at 648-649 (Douglas, J., dissenting).

interpretation is necessary, the General Assembly has expressly provided that courts should interpret statutory terms and phrases according to their common and ordinary (or, if applicable, technical) usage. R.C. 1.42. With the foregoing principles in mind, we analyze each step of R.C. 2505.02(B)(4)'s three-part test below.

1. Provisional Remedy

{¶ 18} To satisfy the definition of "final order" contained in R.C. 2505.02(B)(4), the order at issue must either grant or deny a provisional remedy. To answer this question, the reviewing court must refer to the definition of "provisional remedy" that the General Assembly provided and decide whether the order at issue arose from "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence." R.C. 2505.02(A)(3). In this case, assessing the trial court's forced medication order, the court of appeals decided, "[n]or is this order a provisional remedy under R.C. 2505.02(B)(4) as defined by R.C. 2505.02(A)(3), because it is not in the nature of a preliminary injunction, discovery of privileged matter, or suppression of evidence." We disagree with the court of appeals' interpretation of R.C. 2505.02(B)(4) and (A)(3) for several reasons.

{¶ 19} As a threshold matter, we note that the court of appeals' statement, "[n]or is this order a provisional remedy under R.C. 2505.02(B)(4)" is misleading, for no "order" is *ever* a "provisional remedy" under the statute. The General Assembly expressly defined a "provisional remedy" as a type of *proceeding*. R.C. 2505.02(A)(3). An "order" is thus properly understood as the mandate from the trial court that grants or denies the particular relief at issue in that proceeding—not as the provisional remedy itself. See R.C. 2505.02(B)(4).

{¶ 20} The court of appeals also decided, without explanation, that the trial court's forced medication order was not "in the nature of a preliminary injunction,

discovery of privileged matter, or suppression of evidence." In its merit brief to this court, the state urges us to adopt the court of appeals' view that a forced medication order does not resemble those orders that result from the proceedings listed as examples in R.C. 2505.02(A)(3)'s definition of "provisional remedy." We conclude, however, that although a proceeding for forced medication under R.C. 2945.38 is not among those provisional remedies expressly enumerated in R.C. 2505.02(A)(3), such a proceeding nevertheless *is* a "provisional remedy" for purposes of R.C. 2505.02(A)(3) and (B)(4).

{¶ 21} Without citing supporting legal authority, the state asserts that "the list of examples of provisional remedies in R.C. 2505.02(A)(3) is currently nonexclusive only as to civil remedies." Under the state's interpretation of the statutory definition of "provisional remedy," then, even though the General Assembly inserted the phrase "including, but not limited to" before its enumeration of provisional remedies, a proceeding for the suppression of evidence is the *only* criminal proceeding that could be a "provisional remedy" for purposes of R.C. 2505.02(B)(4). The state's view, however, is undermined by this court's recognition of the fact that the statutory phrase "including, but not limited to" precedes a *nonexhaustive* list of examples. *State v. Lozano* (2001), 90 Ohio St.3d 560, 562, 740 N.E.2d 273, 275; cf. *Boedeker v. Rogers* (2000), 140 Ohio App.3d 11, ___ N.E.2d ___ (noting that by its express terms, the list of provisional remedies in R.C. 2505.02[A][3] is "illustrative and not exhaustive").

{¶ 22} The phrase "proceeding ancillary to an action," which appears in R.C. 2505.02(A)(3) just before the enumeration of certain provisional remedies, is itself undefined—and the parties here disagree on its intended meaning and scope. According to the state, "A narrow definition of the term 'ancillary' in R.C. 2505.02(A)(3) must be applied" to limit pretrial appeals in criminal cases adequately. Muncie and Glenn Weaver, on the other hand, take a broader view. Glenn Weaver quotes a decision from the Marion County Court of Appeals for the

proposition that "[a]n ancillary proceeding is one that is attendant upon or aids another proceeding." *Bishop v. Dresser Industries* (1999), 134 Ohio App.3d 321, 324, 730 N.E.2d 1079, 1081. For the following reasons, we agree with Muncie and Glenn Weaver.

**{¶ 23}** We disagree with the manner in which the state seeks to apply this court's precedent to support its narrow interpretation of R.C. 2505.02(A)(3). The state relies on our decision in *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 16 O.O.3d 461, 406 N.E.2d 532, as support for its view. According to the state, this court observed in *Bernbaum* that in the criminal context "*only* rulings related to suppression of evidence and dismissal for double jeopardy [are] immediately appealable." (Emphasis added.) But our *Bernbaum* case, which predated the General Assembly's adoption of the current definition of "provisional remedy" by nearly two decades, said no such thing. In *Bernbaum*, which was a civil case concerning "special proceedings," the sole issue before this court was whether an order overruling a motion to disqualify counsel was a final order. *Id.* at 446, 16 O.O.3d at 462, 406 N.E.2d at 534. Though this court noted in *Bernbaum* that orders resulting from proceedings on motions to suppress evidence and motions to dismiss on double jeopardy grounds had previously been deemed final orders, the *Bernbaum* court never stated that such orders were the *only* final orders that could arise before final judgment in a criminal proceeding.[7] See *id.* at 447, 16 O.O.3d at 462-463, 406 N.E.2d at 535.

**{¶ 24}** We agree, instead, with Glenn Weaver and the *Bishop* court that for purposes of R.C. 2505.02(A)(3)'s definition, "[a]n ancillary proceeding is one that is attendant upon or aids another proceeding." *Bishop,* 134 Ohio App.3d at 324,

---

7. We also note that the case relied on by this court in *Bernbaum* regarding the final appealability status of orders resulting from proceedings on motions to dismiss on double jeopardy grounds was later overruled. See *Bernbaum,* 62 Ohio St.2d at 447, 16 O.O.3d at 463, 406 N.E.2d at 535, citing *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897, overruled by *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353, syllabus.

730 N.E.2d at 1081. The *Bishop* court derived its definition of an ancillary proceeding from *Sorg v. Montgomery Ward & Co., Inc.* (Dec. 17, 1998), Erie App. No. E-98-057, unreported, 1998 WL 904945. *Bishop* at 324, 730 N.E.2d at 1081. As the *Sorg* court noted, Black's Law Dictionary defined "ancillary" as " '[a]iding; attendant upon; describing a proceeding attendant upon or which aids another proceeding considered as principal. Auxiliary or subordinate.' " *Sorg*, 1998 WL 904945 at *3, citing Black's Law Dictionary (5 Ed.1979) 78. See, also, Black's Law Dictionary (7 Ed.1999) 85 (defining "ancillary" as "[s]upplementary; subordinate").

{¶ 25} The *Bishop* and *Sorg* courts' understanding of the term "ancillary" corresponds to the word's common and ordinary meaning, as well as to this court's prior understanding of the term. See R.C. 1.42; see, also, *Forest City Invest. Co. v. Haas* (1924), 110 Ohio St. 188, 192, 143 N.E. 549, 550. In *Forest City,* we noted that the appointment of a receiver occurs in a proceeding "*ancillary* to the main action." (Emphasis added.) *Id.* The proceeding for the appointment of a receiver *aids the principal proceeding*—the underlying litigation—for the receiver conserves the interests of litigants with respect to property that is in the custody of the court during the course of the principal litigation. *Id.* at 192-193, 143 N.E. at 550; see, also, *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 68, 59 O.O. 74, 78, 133 N.E.2d 606, 612 (noting that "an attachment is a provisional remedy; an ancillary proceeding which must be appended to a principal action and whose very validity must necessarily depend upon the validity of the commencement of the principal action").

{¶ 26} Applying this common understanding of the statutory term "ancillary" to the case at bar, we agree with Muncie and Glenn Weaver that a petition for forced medication under R.C. 2945.38 is a "provisional remedy" ancillary to the criminal action undertaken by the state against an incompetent defendant. As Glenn Weaver notes, "the involuntary administration of medication

to an accused person for the purpose of restoring that person's competency to face criminal charges 'aids' in the resolution of the criminal proceeding and is 'attendant upon' that proceeding." Under the version of R.C. 2945.38 at issue in this case, a court entertains a petition for forced medication only when the incompetent defendant lacks the capacity to give informed consent or refuses medication that the defendant's treating physicians deem necessary for restoration to competency. R.C. 2945.38(B). Absent a provisional remedy in such cases—an ancillary proceeding for forced medication—the incompetent defendant would likely never be restored to the status of legal competency. And due process principles forbid the state from subjecting a legally incompetent defendant to trial. *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433, 438.

{¶ 27} We note that an appellate court's determination that a particular proceeding constitutes a "provisional remedy" is only one step of the analysis required under R.C. 2505.02(B)(4). Not every order granting or denying relief sought in an ancillary proceeding will necessarily satisfy the additional requirements imposed by R.C. 2505.02(B)(4)(a) and (b). See *Gupta v. Lima News* (Feb. 5, 2001), Allen App. No. 1-99-83, unreported, 2001 WL 101369 (noting that even if an order compelling production of records for an *in camera* inspection satisfied the "provisional remedy" prong of R.C. 2505.02[B][4], the order would *not* satisfy the additional requirements imposed by R.C. 2505.02[B][4][a] and [B][4][b]).

### 2. R.C. 2505.02(B)(4)(a)

{¶ 28} Even if a reviewing court determines that a particular order arises from a "provisional remedy," the reviewing court must still determine whether that order effectively determines the action with respect to the provisional remedy and prevents a judgment in favor of the appealing party with respect to the provisional remedy. Only those orders meeting these additional requirements will be deemed final under R.C. 2505.02(B)(4). R.C. 2505.02(B)(4)(a).

**{¶ 29}** This question is easily answered in this case. The forced medication order issued by the trial court determined the action against Muncie with respect to Ross's petition for forced medication. The order definitively provided that the physicians at Twin Valley could administer medication to Muncie against his will in an effort to restore his competency to stand trial. The order also prevented a judgment in favor of Muncie with respect to the proceeding for forced medication, as it contained no provision permitting Muncie to contest either the administration or dosage amounts of the drugs listed in Ross's letter. Cf. *Swearingen v. Waste Technologies Industries* (1999), 134 Ohio App.3d 702, 713, 731 N.E.2d 1229, 1236 (finding that an order precluding an attorney from appearing *pro hac vice* met R.C. 2505.02[B][4][a] because "there was no further opportunity to petition the court for the remedy being sought. The underlying action would have continued on its way and appellants would have been forced to proceed without the aid of the counsel requested"); see, also, *State v. Saadey* (June 30, 2000), Columbiana App. No. 99CO49, unreported, 2000 WL 1114519 (finding that an order disqualifying defense counsel met R.C. 2505.02[B][4][a]). Accordingly, the second step of our inquiry has been satisfied, for the trial court's forced medication order meets R.C. 2505.02(B)(4)(a).

### 3. R.C. 2505.02(B)(4)(b)

**{¶ 30}** Finally, the General Assembly has determined that an order arising from a provisional remedy is not a final order unless "the appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4)(b). This division of the final order statute recognizes that, in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment. In some instances, "[t]he proverbial bell cannot be unrung and an appeal after final judgment on the

merits will not rectify the damage" suffered by the appealing party. See *Gibson-Myers & Assocs. v. Pearce* (Oct. 27, 1999), Summit App. No. 19358, unreported, 1999 WL 980562, at *2; see, also, *Cuervo v. Snell* (Sept. 26, 2000), Franklin App. Nos. 99AP-1442, 99AP-1443 and 99AP-1458, unreported, 2000 WL 1376510.

{¶ 31} In *Gibson-Myers*, *supra,* the Summit County Court of Appeals determined that an order compelling the production of documents containing trade secrets was a final order, for the party resisting disclosure of those documents would have had no ability after final judgment to restore the cloak of secrecy lifted by the trial court's order compelling production. *Id.*, 1999 WL 980562, at *2. In *Cuervo*, the Franklin County Court of Appeals reached the same conclusion when confronted with an appeal from an order compelling production of certain communications about asset transfers—communications that were allegedly subject to the attorney-client privilege. *Cuervo,* 2000 WL 1376510, at *2.

{¶ 32} We find that an order compelling the administration of psychotropic medication under R.C. 2945.38 satisfies R.C. 2505.02(B)(4)(b). As Glenn Weaver notes in its *amicus curiae* brief, "The availability of appellate review after a sentence is imposed offers no effective remedy for the accused person forced to endure the side effects of those medications during the pendency of the * * * proceedings." As noted *supra,* both this court and the United States Supreme Court have explicitly recognized the "particularly severe" interference with an individual's liberty interest caused by the involuntary administration of antipsychotic drugs, as well as the potential for serious and even fatal side effects that can result from the administration of such medication. See *Steele, Riggins,* and *Harper, supra.* An incompetent criminal defendant forced to ingest potentially harmful psychotropic medications against his or her will has an even greater interest in an immediate appeal from that order than a party compelled to disclose potentially privileged documents or trade secrets in a civil case. Accordingly, for purposes of R.C. 2505.02(B)(4)(b), we conclude that an incompetent defendant

subject to an order compelling the involuntary administration of psychotropic medication would have no meaningful or effective remedy by an appeal following final judgment.

### III. Conclusion

{¶ 33} In *State v. Garcia* (1995), 233 Conn. 44, 62, 658 A.2d 947, 956, the Supreme Court of Connecticut assessed whether that state's appellate courts had jurisdiction to hear an incompetent defendant's interlocutory appeal from an order authorizing the involuntary administration of medication. The *Garcia* court conceded that interlocutory appeals were generally disfavored in criminal cases, that appellate jurisdiction was limited by statute, and that an interlocutory order was appealable only "where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *Id.* at 64, 658 A.2d at 957, citing *State v. Curcio* (1983), 191 Conn. 27, 31, 463 A.2d 566, 569-570. The *Garcia* court decided, however, that the forced medication order infringed upon the incompetent defendant's vested liberty interest, and that "once such an interest is infringed upon by the state, the defendant's personal rights cannot be restored." *Id.* at 66, 658 A.2d at 958. We agree, and hold that when a trial court orders an incompetent defendant to be forcibly medicated with psychotropic drugs in an effort to restore the defendant to competency, that order is final and appealable. The decision of the court of appeals is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., concurs in syllabus and judgment.

DOUGLAS, J., concurs in judgment.

————————————

*Donald W. White*, Clermont County Prosecuting Attorney, and *David H. Hoffman,* Assistant Prosecuting Attorney, for appellee.

*Rosenhoffer, Nichols & Schwartz* and *James A. Hunt,* for appellant.

*A.J. Stephani*, Executive Director, Glenn Weaver Institute of Law and Psychiatry, urging reversal for *amicus curiae* Glenn Weaver Institute of Law and Psychiatry, University of Cincinnati School of Law.

*Michael K. Allen*, Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, urging affirmance for *amicus curiae* Ohio Prosecuting Attorneys' Association.

———————————