DECISION AND JUDGMENT ENTRY
{¶ 1} The state appeals the grant of a motion for reconsideration and the court's subsequent decision to quash the grand jury subpoena issued for My Sister's Place. First, the state contends that the court had no authority to entertain the motion for reconsideration. Since the trial court's original denial of the motion to quash was not a final appealable order, the trial court was free to reconsider its decision at any time. Next, the state contends that the trial court erred in relying on R.C. 3113.40 to quash the subpoena. The trial court did not err because R.C. 3113.40 clearly mandates that a domestic violence victim's address and telephone number may only be released to a public children services agency.
 {¶ 2} After an automobile accident in July 2001, the Sheriff's Department filed a complaint in the Athens County Municipal Court alleging that William A. Stanley committed domestic violence against Theresa Graham. Subsequently, the state voluntarily dismissed this charge in the municipal court because it could not locate the victim, Ms. Graham. In August 2001, the state served a grand jury subpoena duces tecum on the Keeper of Records for My Sister's Place, a woman's shelter for victims of domestic violence (the shelter). The state requested that the shelter turn over Graham's current address and telephone number to the grand jury in order to investigate the complaint and determine if it should prosecute Stanley for domestic violence. However, the shelter filed a motion to quash the subpoena.
 {¶ 3} In its motion, the shelter relied on R.C. 2317.02(G)'s counselor-client privilege[1] and certain aspects of federal law.[2]
Moreover, the shelter made a public policy argument, arguing that it could not adequately protect victims of domestic violence if the court forced it to reveal Graham's address and telephone number. In an entry filed November 5, 2001, the trial court rejected all three arguments. The last paragraph of the November 5, 2001 entry stated: "[t]he Court does not intend that its order be construed as final and appealable."
 {¶ 4} A little over a week after the trial court's decision, the shelter filed a motion for reconsideration. This time the shelter presented the court with R.C. 3113.40. The shelter argued, and the trial court held in a November 21, 2001 entry, that R.C. 3113.40 required the shelter to keep Graham's address and telephone number confidential. Therefore, the trial court reversed its earlier decision and granted the shelter's motion to quash. The state appealed and assigned the following errors:
 {¶ 5} FIRST ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED IN FINDING THAT THE INFORMATION REGARDING A VICTIM'S NAME, ADDRESS AND PHONE NUMBER ARE PRIVILEGED AND THEREFORE CANNOT BE DISCLOSED TO THE STATE.
 {¶ 6} SECOND ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR RECONSIDERATION AS THERE IS NO AUTHORITY TO GRANT SUCH A MOTION.
 {¶ 7} We address the state's second assignment of error initially since it raises procedural issues that the state contends require reversal of the trial court's order on jurisdictional grounds. The state argues that the trial court had no authority to consider the shelter's motion for reconsideration. The state contends that all motions for reconsideration are nullities and are of no force or effect. We find no merit in this argument.
 {¶ 8} Under their plenary powers, trial court's have discretion to entertain certain motions for reconsideration. Where such discretion exists, we will not reverse the trial court's decision absent its abuse. See Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525, 535,706 N.E.2d 825. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Franklin Cty. Sheriff's Dept. v. State Emp. RelationsBd. (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24.
 {¶ 9} As a preliminary matter, the state contends that we should apply the civil rules in determining whether the trial court had authority to consider the shelter's motion for reconsideration. Grand juries are a province strictly for criminal proceedings and a motion to quash a grand jury subpoena is an ancillary action to the grand jury proceedings. See, generally, Crim.R. 6 and R.C. 2505.02(B)(4). While neither the criminal rules nor the civil rules specifically provide for a motion for reconsideration, we conclude trial courts have plenary power in this area in certain situations. See Vanest, 124 Ohio App.3d at 535. Moreover, our conclusion would not change regardless which rules we apply.
 {¶ 10} Motions for reconsideration are a nullity only after a trial court issues a final judgment or final order. Pitts v. Ohio Dept.of Transp. (1981), 67 Ohio St.2d 378, 379, 423 N.E.2d 1105. See, also,State v. Whaley (July 9, 1997), Gallia App. No. 96CA17 (stating that the rule enunciated in Pitts applies to criminal cases just as it does in civil cases). Therefore, we must decide whether the trial court's original decision of November 5, 2001, that denied the shelter's motion to quash was a final order.
 {¶ 11} There are no "hard and fast rules" for determining whether a trial court's decision is a final order. Vanest,124 Ohio App.3d at 534, n. 4. Instead, we must make such determinations on a case-by-case basis. Id. Moreover, as we stated in Vanest: "the document purporting to be a judgment entry must disclose the present intention of the court to terminate the action and should contain a sufficiently definitive formal statement indicating such an intention. [citations omitted]. * * * Additionally, "the label or title placed on a document is not by itself determinative that the document is, in fact, a judgment entry." St.Vincent Charity Hosp. v. Mintz (1987), 33 Ohio St.3d 121, 123,515 N.E.2d 917. Id."
 {¶ 12} R.C. 2505.02(B)(4) defines a "final order" as: "[a]n order that grants or denies a provisional remedy and to which both of the following apply: (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy. (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." In this very appeal, when analyzing the final and appealable nature of the trial court's November 21, 2001 entry, we determined that an entry granting a motion to quash a grand jury subpoena was a final appealable order under R.C. 2505.02(B)(4). In our April 18, 2002 entry, we concluded that a motion to quash a grand jury subpoena was a provisional remedy because it involved a proceeding that is ancillary to, i.e., attendant upon or aids, the grand jury. See R.C. 2505.02(A)(3) (defining a provisional remedy as "a proceeding ancillary to an action"). See, also, State v. Muncie, 91 Ohio St.3d 440,444-48, 2001-Ohio-93, 746 N.E.2d 1092 (providing that the following three-part test must be met before an order is a "final order" under R.C. 2505.02(B)(4). The Muncie Court stated: "(1) the order must either grant or deny relief sought in a certain type of proceeding — a proceeding that the General Assembly calls a "provisional remedy," (2) the order must both determine the action with respect to the provisional remedy and prevent a judgment in favor of the appealing party with respect to the provisional remedy, and (3) the reviewing court must decide that the party appealing from the order would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action. Muncie,91 Ohio St.3d at 446."
 {¶ 13} Looking at the trial court's November 5, 2001 entry, it is clear that the first step is satisfied because the denial of the motion to quash a subpoena is a provisional remedy. But the second step is not. After denying the shelter's motion to quash, the trial court released its decision with a title stating "DECISION ON MOTION TO QUASH; JUDGMENT ENTRY." However, the court further stated "[t]he Court does not intend that its order be construed as final and appealable." In fact, in its November 21, 2001 entry granting the shelter's motion to quash, the trial court made the following statement regarding its original decision: "[i]n the absence of showing one policy being predominant over the other, the Court denied the Motion to Quash but urged the parties to seek a solution to the impasse. The Court's efforts to urge the parties to work together and devise a compromise failed." In the same entry, the trial court later stated: "[i]n response to the State's argument that a Motion to Reconsider is a nullity, the Court is not required to rule upon a Motion to Reconsider, but it can consider such a filing where, as here, the prior order by its own terms and pursuant to binding precedent, was merely interlocutory."
 {¶ 14} It is clear to us that the trial court never intended that its original order of November 5, 2001, would determine the action with respect to the provisional remedy and prevent a judgment in favor of the shelter. In light of the trial court's express intention and the language of R.C. 2505.02(B)(4)(a), the November 5, 2001 decision denying the shelter's motion to quash was not a final order. Rather it was interlocutory in nature, and thus subject to reconsideration.[3]
 {¶ 15} Moreover, the grand jury is not a special proceeding, seeIn re Grand Jury (June 1, 1995), Washington App. Nos. 93CA09, 93CA10, 93CA12, affirmed by In re Grand Jury (1996), 76 Ohio St.3d 236. Therefore, R.C. 2505.02(B)(2) is inapplicable.
 {¶ 16} The trial court did not abuse its discretion in considering the shelter's motion for reconsideration. The state's second assignment of error is overruled.
 {¶ 17} In its first assignment of error, the state argues that the trial court erred by concluding R.C. 3113.40 required it to quash the grand jury subpoena. We find no merit in the state's argument because R.C. 3113.40's plain language mandates the trial court's decision.
 {¶ 18} Generally, we review a trial court's decision to quash a subpoena under an abuse of discretion standard. State v. Riffle, Pickaway App. No. 00CA041, 2001-Ohio-2415. However, if the trial court's decision involves a specific construction of law we will review the decision de novo. Id. citing Petro v. North Coast Villas Ltd. (2000),136 Ohio App.3d 93, 735 N.E.2d 985. See, also, Stapleton v. Holstein
(1998), 131 Ohio App.3d 596, 598, 723 N.E.2d 164. Here, the trial court based its decision to grant the shelter's motion to quash on its interpretation of R.C. 3113.40.
 {¶ 19} Our primary concern when construing a statute is to discern the statute's legislative intent. In re Hayes (1997), 79 Ohio St.3d 46,48, 679 N.E.2d 680; State v. S.R. (1992), 63 Ohio St.3d 590, 594-95,589 N.E.2d 1319. When determining legislative intent we must first look to the statute's language. Id. We must apply an unambiguous statute as written, not interpret it. Hartmann v. Duffey, 95 Ohio St.3d 456,2002-Ohio-2486, 768 N.E.2d 1170, at ¶ 8; L.J. Minor Corp. v.Breitenbach, 77 Ohio St.3d 168, 171, 1996-Ohio-325, 672 N.E.2d 636. So long as the statute is unambiguous and definite, there is no need for further analysis. Hartmann, at ¶ 8. We are also mindful of the cardinal rule that we must construe a statute in such a fashion as to avoid absurd or unreasonable results. State v. Robb, 88 Ohio St.3d 59,66, 2000-Ohio-275, 723 N.E.2d 1019, citing Mishr v. Bd. of ZoningAppeals, 76 Ohio St.3d 238, 240, 1996-Ohio-400, 667 N.E.2d 365.
 {¶ 20} R.C. 3113.40 states: "When a shelter for victims of domestic violence provides accommodations to a person, the shelter, on admitting the person, shall determine, if possible, the person's last known residential address and county of residence. The information concerning the address and county of residence is confidential and may bereleased only to a public children services agency pursuant to section2151.422 [2151.42.2] of the Revised Code." [Emphasis Added]. R.C. 3113.40
clearly and plainly states that when victims of domestic violence provide their address to a shelter, that information is confidential and may be released only to a public children services agency under R.C. 2151.422. Here, there is no contention, nor does the record reflect that children are involved or that the county prosecutor is acting on behalf of children's services. Thus, R.C. 2151.422 does not apply. Because the only statutory exception to confidentiality is not present, Graham's telephone number and address must remain confidential. See Independent Ins.Agents, Inc. v. Fabe (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814
(stating that the specific mention of one class in a statute implies that the legislature intended to exclude all others).
 {¶ 21} In spite of the statute's unambiguous language, the state contends we should adopt what amounts to a "law enforcement" public policy exception to its mandate. First, the state argues that Biddle v.Warren General Hosp., 86 Ohio St.3d 395, 1999-Ohio-115, 715 N.E.2d 518, which was decided after the statute was enacted, should control our application of R.C. 3113.40. In Biddle, the court held that "in the absence of prior authorization, a physician * * * is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protector further a countervailing interest which outweighs the patient'sinterest in confidentiality." [Emphasis Added]. Id. at 402. The state asserts that the need for Stanley's prosecution outweighs the interest in Graham's confidentiality.
 {¶ 22} The state also argues that the Second District, in Fair v.St. Elizabeth Med. Ctr. (2000), 136 Ohio App.3d 522, 737 N.E.2d 106, applied the exception in Biddle and allowed discovery of a patient's medical records. The state's reliance on Fair, which involved a patient's suit against a hospital after an assault by another patient, is misplaced. In Fair, the court specifically held "we believe that this situation warrants disclosure, we further find that it is necessary to redact the identifying information, including the alleged attacker's name, address, and name of his treating psychiatrist, from the medical records." Id. at 527. Thus, Fair stands for the proposition that a patient's identifying information, i.e., address and telephone number, should be held in confidence. Moreover, as in Biddle, Fair does not involve R.C. 3113.40 or an instance of domestic violence. Instead, as inBiddle, Fair involves the application of R.C. 2317.02, the doctor-patient privilege statute. Therefore, Biddle and Fair do not directly control our reading of R.C. 3113.40.
 {¶ 23} By and large, courts of appeal in Ohio function in an error correction capacity. We leave the creation of public policy to the legislature and the Supreme Court. The Supreme Court has rendered seemingly conflicting decisions in the context of common law public policy exceptions to legislatively created privileges. Compare State v.Smorgala (1990), 50 Ohio St.3d 222, 553 N.E.2d 672, paragraph one of the syllabus (rejecting judicial creation of such exceptions) and State v.Biddle, supra (encouraging such judicial activism). See, also, State v.Jones, 90 Ohio St.3d 403, 2000-Ohio-187, 739 N.E.2d 300 (reiterating the rule in Smorgala but finding the circumstances in Jones distinguishable because it involved the interplay between two statutes, not a statute and a judicially created public policy exception, which was at issue inSmorgala); In re Wieland, 89 Ohio St.3d 535, 2000-Ohio-233, 733 N.E.2d 1127
(relying on Smorgala and In re Miller, infra, when stating "[t]his court has repeatedly and consistently refused to engraft judicial waivers, exceptions, or limitations into the testimonial privilege statutes"); Inre Miller (1992), 63 Ohio St.3d 99, 585 N.E.2d 396 (relying on Smorgala
in refusing to judicially engraft an exception while also opening the door for possible exceptions by stating "the facts of this case are not so compelling that a judicially created wavier must be invoked"). In light of our limited role in the public policy context and the Supreme Court's apparent lack of consistency in this arena, we leave creation of a law enforcement exception to the privilege created by R.C. 3113.40 to others.
 {¶ 24} Moreover, we see nothing absurd or unreasonable about this result. Both interests, the need for criminal prosecutions and the need for confidentiality of domestic violence victims, are important interests to protect. Nevertheless, in this instance, it is clear that the Ohio General Assembly's intent is to elevate the interests of confidentiality for victims of domestic violence over the need for criminal prosecutions. Therefore, by its plain language, R.C. 3113.40 mandates that we affirm the trial court's grant of the shelter's motion to quash. The state's first assignment of error is overruled.
 {¶ 25} Since the trial court's original decision to deny the shelter's motion to quash was not a final order, the trial court was free to entertain the shelter's motion for reconsideration. Moreover, R.C.3113.40 clearly and unambiguously prevents the disclosure of Graham's address and telephone number because the county prosecutor was not acting as an agent of a public children services agency.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment and Opinion.
[1] R.C. 2317.02(G) states in part that "[t]he following persons shall not testify in certain respects * * * a professional clinical counselor, professional counselor, social worker, or independent social worker * * * concerning a confidential communication received from a client in that relation or the person's advice to a client unless any of the following apply."
[2] My Sister's Place argues that it is required by the "Victim Compensation and Assistance Act," 42 U.S.C. § 10604, to keep any statistical information furnished by the victim confidential.
[3] Interlocutory orders are subject to motions for reconsideration.Pitts, 67 Ohio St.2d at 379, n. 1. In the past, a trial court's decision on discovery orders and motions to quash were interlocutory orders. In reCoastal States Petroleum, Inc. (1972), 32 Ohio St.2d 81, 290 N.E.2d 844, syllabus. See, also, In re Grand Jury, 76 Ohio St.3d 236, 1996-Ohio-399,667 N.E.2d 363, affirming In re Grand Jury (June 1, 1995), Washington App. No. 93CA09, 93CA10, 93CA12. However, since the 1998 amendments to R.C. 2505.02 some courts have held that discovery orders and motions to quash may be final appealable orders so long as the requirements in R.C.2505.02(B)(4) are met. See Sirca v. Medina Co. Dept. of Human Serv. (2001), 145 Ohio App.3d 182, 762 N.E.2d 407; Future Comm., Inc. v.Hightower, Franklin App. No. 01AP-1175, 2002-Ohio-2245; Coates v. OttawaCty. Bd. of Revision, Ottawa App. No. OT-01-041, 2002-Ohio-1508; Confortev. LaSalla (Nov. 1, 2001), Cuyahoga App. No. 79358. Moreover, in Statev. Muncie, 91 Ohio St.3d 440, 2001-Ohio-93, 746 N.E.2d 1092, the Ohio Supreme Court recommends that courts reanalyze its prior decisions regarding final appealable orders in light of revised R.C. 2505.02. See, also, Whiteside, Ohio Appellate Practice (2001 Ed.) at 54 (indicating that, although, the Ohio Supreme Court does not currently consider a motion to quash a grand jury subpoena a final appealable order, that decision may be subject to reexamination in light of the 1998 amendments to R.C. 2505.02).