**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.H.,* Slip Opinion No. 2018-Ohio-17.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-17

IN RE D.H.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.H.,* Slip Opinion No. 2018-Ohio-17.]**

*Juvenile court—Appeals—R.C. 2505.02—Juvenile court's orders transferring jurisdiction to adult court are not appealable under R.C. 2505.02(B)(4)— Court of appeals' judgment granting state's motion to dismiss appeals for lack of final order affirmed.*

(Nos. 2016-1195 and 2016-1197—Submitted September 12, 2017—Decided January 4, 2018.)

APPEAL from the Court of Appeals for Montgomery County,

Nos. 27074 and 27075, 2016-Ohio-5265.

_____

**DEWINE, J.**

{¶ 1} May a juvenile who is "bound over" to adult court immediately appeal the bindover decision, or must his appeal wait until the end of the adult-court

proceedings? We conclude that the appeal must wait. That is what the court of appeals decided, so we affirm its judgment.

## I. BACKGROUND

{¶ 2} D.H. was 17 years old when he was charged in separate complaints with two counts of robbery. The juvenile court held a hearing, determined that D.H. was not amenable to rehabilitation in the juvenile system, and transferred jurisdiction to the adult court.

{¶ 3} D.H. pled no contest to the charges in adult court and was sentenced to four years in prison. He then appealed his discretionary transfer to the Second Appellate District. The court of appeals concluded that the juvenile court had erred in transferring D.H. because it had not articulated the reasons that D.H. was not amenable to rehabilitation in the juvenile system. On remand from the court of appeals, the juvenile court again found that D.H. was not amenable to rehabilitation.

{¶ 4} This time, rather than waiting until the end of the adult-court proceedings, D.H. immediately appealed the juvenile court's transfer orders. The court of appeals granted the state's motion to dismiss the appeals for lack of a final order.

## II. THE FINAL-ORDER REQUIREMENT

{¶ 5} The question whether an immediate appeal from a bindover decision is available depends on whether such a decision is a "final order." The final-order requirement comes from the Ohio Constitution, which provides that courts of appeals "shall have such jurisdiction as may be provided by law" to review "final orders" rendered by inferior courts. Ohio Constitution, Article IV, Section 3(B)(2). Jurisdiction is "provided by law" primarily through two statutes. The first, R.C. 2501.02, the "jurisdictional statute," provides that courts of appeals have jurisdiction

> upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district, including the finding, order, or judgment of a juvenile court that a child is delinquent, neglected, or dependent, for prejudicial error committed by such lower court.

In the second statute, R.C. 2505.02, the "definitional statute," the legislature has defined various categories of orders as final. First, we address our caselaw under the jurisdictional statute.

### A. The jurisdictional statute: *In re Becker* holds that bindover decisions are not final orders

{¶ 6} In *In re Becker*, 39 Ohio St.2d 84, 314 N.E.2d 158 (1974), this court held that bindover decisions are not final orders. In *Becker*, we focused on the jurisdictional statute—R.C. 2501.02—to determine whether the transfer of a juvenile pursuant to former R.C. 2151.26 (the precursor to R.C. 2152.12) was a final order. Under an earlier version of the transfer statute, transfers from juvenile court had been found to be final orders. *Becker* at 86, citing *In re Whittington*, 17 Ohio App.2d 164, 175, 245 N.E.2d 364 (5th Dist.1969). But the earlier transfer statute had required a finding of delinquency prior to the transfer, so the transfer orders fell within the language of R.C. 2501.02. *Becker* at 86. Under the transfer statute in effect when *Becker* was decided, no finding of delinquency was required. *See* former R.C. 2151.26, Am.Sub.H.B. No. 320, 133 Ohio Laws, Part II, 2040, 2049-2050. Thus, because the transfer order was not a finding that the juvenile was "delinquent, neglected, or dependent," we concluded that it was not a final order under the jurisdictional statute. *Becker* at 86.

{¶ 7} We also noted in *Becker* the legislature's interest—and our own—in avoiding undue delay in juvenile proceedings:

Now, this court has taken other affirmative action to put an end to unnecessary delay [in juvenile matters], as has the General Assembly. It is time for an end to endless appeals that perpetuate procrastination, and a time for this court to give direction and a definite order of instruction determining the path of appellate procedure in these matters.

*Id.* at 87.

### B. The definitional statute: Post-*Becker*, the legislature expands the definition of "final order"

{¶ 8} D.H. asks that we reconsider *Becker* because the legislature has amended the definitional statute. When *Becker* was decided, R.C. 2505.02 defined "final order" as (1) an order affecting a substantial right in an action that in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, or (3) an order vacating or setting aside a judgment and ordering a new trial. In 1998, the legislature amended the definitional statute to expand the definition of "final order." Most notably, a new provisional-remedy category of final orders was created as follows:

An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

4

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02(B)(4), Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277, 3278. D.H. maintains that the juvenile court's orders transferring jurisdiction over his cases fall within this provisional-remedy provision.

### C. Our inquiry does not stop with the jurisdictional statute

{¶ 9} The state counters that we should analyze this case under the jurisdictional statute, R.C. 2501.02, as we did in *Becker*. It relies on that statute's explicit grant of jurisdiction to review final orders, "including the finding, order, or judgment of a juvenile court that a child is delinquent, neglected, abused, or dependent," R.C. 2501.02. The state emphasizes that under *Becker*, a bindover order that does not contain a finding that a juvenile is delinquent, neglected, abused, or dependent is not a final order. But we have rejected the argument that "only the classifications of juvenile court judgments specifically enumerated" in the jurisdictional statute are immediately appealable. *In re Hartman*, 2 Ohio St.3d 154, 155, 443 N.E.2d 516 (1983). Thus, in *Hartman*, we concluded that a judgment determining a juvenile to be a juvenile traffic offender was a final order, even though the juvenile court had not found the child to be delinquent, neglected, abused, or dependent. *Id.* at 157.

{¶ 10} More recently, in *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, we were asked whether a juvenile court's order denying a motion for mandatory bindover was a final order. Rather than rely on the list of final-order categories set forth in the jurisdictional statute, we turned to the definitional statute. *Id.* at ¶ 15-18. We determined that the juvenile court's denial of the mandatory-bindover motion was a final order under the provisional-remedy provision, R.C. 2505.02(B)(4), of that statute. *Id.* at ¶ 28.

**D. The bindover decision is not appealable as a provisional remedy**

{¶ 11} D.H. maintains that the juvenile court's transfer orders in this case are likewise appealable under the provisional-remedy provision of the definitional statute. We consider whether the orders meet the requirements of R.C. 2505.02(B)(4), that is, (1) whether the orders are provisional remedies, (2) whether the orders determine the action and prevent a judgment in D.H.'s favor with respect to the provisional remedies, and (3) whether D.H. would have a meaningful or effective remedy if his appeal must wait until after final judgment in his case.

*1. The juvenile court's orders are provisional remedies*

{¶ 12} The state concedes that the juvenile court's orders here are provisional remedies. R.C. 2505.02(A)(3) defines "provisional remedy" as "a proceeding ancillary to an action." In *In re A.J.S.*, we noted that we had defined "ancillary proceeding" as " ' "one that is attendant upon or aids another proceeding." ' " *A.J.S.* at ¶ 20, quoting *State v. Muncie*, 91 Ohio St.3d 440, 449, 746 N.E.2d 1092 (2001), quoting *Bishop v. Dresser Industries, Inc.*, 134 Ohio App.3d 321, 324, 730 N.E.2d 1079 (3d Dist.1999). Applying that definition, we determined that a mandatory-bindover hearing is "ancillary to grand jury proceedings and to adult criminal prosecution" because it "aids the juvenile court in determining whether it has a duty to transfer jurisdiction" to adult court. *A.J.S.* at ¶ 23.

{¶ 13} Likewise, in this case, the discretionary-bindover hearing under R.C. 2152.12 is ancillary to the adult-court proceedings that would determine whether D.H. is guilty and would impose sentence if appropriate. We conclude that the juvenile court's orders transferring jurisdiction are provisional remedies.

*2. The orders determined the action with respect to the provisional remedies*

{¶ 14} The state maintains that the juvenile court's transfer orders did not "determine[] the action." Instead, the state points out, "[t]he decision on whether or not to bind a discretionary case over will never terminate the prosecution of the

case—it merely determines in which court the case will proceed." But the focus of the state's argument is misplaced. The question whether an entire action is determined does arise under R.C. 2505.02(B)(1), which provides that "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment" is a final order. But we are considering the transfer orders under R.C. 2505.02(B)(4), which requires determination only of "the action with respect to the provisional remedy" and prevention of judgment "with respect to the provisional remedy," R.C. 2505.02(B)(4)(a).

{¶ 15} There is no question that the juvenile court's transfer orders here determined the action as to bindover. Once the juvenile court determined that D.H. was not amenable to rehabilitation in the juvenile system and transferred jurisdiction to the adult court, the juvenile court's jurisdiction was abated "with respect to the delinquent acts alleged in the complaint." R.C. 2152.12(I).

*3. D.H. may obtain an effective remedy through appeal of the final judgment*

{¶ 16} D.H. must do more than show that the juvenile court's transfer orders in this case determined the action with respect to the provisional remedies. He must also demonstrate that he would lack a meaningful or effective remedy if he must wait to appeal until after final judgment in the adult court. His attempt to demonstrate this is where he comes up short.

{¶ 17} D.H. points out that one factor in determining whether a juvenile should be bound over to adult court is the sufficiency of time to rehabilitate him in the juvenile system. *See* R.C. 2152.12(D)(9) and (E)(8). In D.H.'s view, if he has to wait for final judgment in adult court before challenging the bindover decision, he loses time for rehabilitation and—potentially—could age out of the juvenile system. But by itself, the passage of time—a factor in virtually every case in which a party must wait to appeal—does not render a future appeal meaningless or ineffective.

**{¶ 18}** In determining whether appeal after final judgment would afford a meaningful or effective remedy, we consider whether there is a harm such that appeal after final judgment would not " 'rectify the damage.' " *Muncie*, 91 Ohio St.3d at 451, 746 N.E.2d 1092, quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999). Put another way, " 'the proverbial bell cannot be unrung.' " *Id.*, quoting *Gibson-Myers* at *2. Thus, in *Muncie*, we concluded that an order compelling the medication of a defendant to restore competency was a final order. *Id.* at 451-452. The involuntary administration of the drugs could not be undone even if an appeal from a judgment of sentence was successful. Likewise, in *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 4, we concluded that the denial of a motion to dismiss on double-jeopardy grounds was immediately appealable. We reasoned that if the appellant had to wait until after final judgment to challenge the denial, he would have already lost the protection of the Double Jeopardy Clause. *Id.* at ¶ 55. And in *A.J.S.*, we determined that the denial of a mandatory-bindover motion was a final order "[b]ecause double jeopardy attaches once the adjudicatory phase of the delinquency proceedings commences," precluding the prosecution from challenging the denial on appeal at the end of the juvenile proceedings. 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 28.

**{¶ 19}** Here, the harm alleged in D.H.'s appeal—the transfer of his cases to adult court—can be rectified following final judgment. His prior appeal demonstrated as much: he successfully pursued an appeal of the juvenile court's first bindover decision. The passage of time alone would not render an appeal following final judgment meaningless or ineffective.

**{¶ 20}** Indeed, some of the passage of time about which D.H. complains has been occasioned by his pursuit of interlocutory review. When D.H. was bound over to the adult court, the speedy-trial clock began running. *See State v. Bickerstaff*, 10 Ohio St.3d 62, 67, 461 N.E.2d 892 (1984), citing *State ex rel. Williams v. Court of*

8

*Common Pleas*, 42 Ohio St.2d 433, 435, 329 N.E.2d 680 (1975). By filing interlocutory appeals, D.H. has tolled the speedy-trial clock and brought further delay. *See* R.C. 2945.72(E). This type of delay was at the heart of the call we made in *Becker* to "end * * * endless appeals that perpetuate procrastination," 39 Ohio St.2d at 87, 314 N.E.2d 158.

{¶ 21} The passage of time and speculation about its effect are not sufficient to demonstrate that D.H. will be deprived of a meaningful or effective remedy if he must wait to challenge the juvenile court's bindover decision until after final judgment.

### III. CONCLUSION

{¶ 22} The juvenile court's orders transferring jurisdiction to the adult court are not final orders under R.C. 2505.02(B)(4). The court of appeals properly dismissed the appeals.

Judgment affirmed.

KENNEDY, FRENCH, and FISCHER, JJ., concur.

O'CONNOR, C.J., and O'DONNELL, J., concur in judgment only.

O'NEILL, J., dissents.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Heather N. Jans, Assistant Prosecuting Attorney, for appellee, state of Ohio.

Timothy Young, Ohio Public Defender, and Charlyn Bohland, Assistant Public Defender, for appellant, D.H.

_____