DeWine, J., dissenting.
{¶ 63} The majority is eager to decide this case now. I understand that. If we had jurisdiction to do so, I would like to decide it today as well. But under our Constitution and precedent, we lack jurisdiction. Though it may be temporarily inconvenient, I would adhere to the bounds placed on our authority rather than succumb to the temptation to expand those boundaries for the expediency of immediately deciding this one case.
Our Constitution Allows Review of Only Final Orders
{¶ 64} Our Constitution provides that courts of appeals "shall have such jurisdiction as may be provided by law" to review "final orders" issued by inferior courts. Ohio Constitution, Article IV, Section 3 (B)(2).
{¶ 65} The "provided by law" part of the constitutional grant is accomplished primarily through R.C. 2505.02(B), which defines "final order" by identifying seven categories of orders as final. Relevant here is R.C. 2505.02(B)(2), which includes as a "final order" "[a]n order that affects a substantial right made in a special proceeding."
{¶ 66} The majority is correct that a divorce action is a special proceeding. The question is whether the trial court's order appointing a guardian ad litem ("GAL") for Carol Thomasson "affects a substantial right."
An Order Affects a Substantial Right Only If an Immediate Appeal Is Necessary to Protect that Right
{¶ 67} In Bell v. Mt. Sinai Med. Ctr. , 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993), we held that "[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." In other words, as we later explained in Wilhelm-Kissinger v. Kissinger , 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 10, the effect of the order is *1254 "irreversible." The critical question in *415 determining whether an order affects a "substantial right" is whether "an immediate appeal is necessary to protect the right effectively." Id. at ¶ 7.
{¶ 68} The definition we adopted in Bell is consistent with longstanding principles that generally limit appellate review to final decisions in order to avoid "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy," Eisen v. Carlisle & Jacquelin , 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.E.2d 732 (1974). We have found such considerations central to determining whether the special-proceeding prong of the Constitution's final-order requirement has been met. Prior to Bell , we furthered these interests through a test that defined "special proceeding" by balancing "the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable." Amato v. Gen. Motors Corp. , 67 Ohio St.2d 253, 258, 423 N.E.2d 452 (1981), quoting State v. Thomas , 61 Ohio St.2d 254, 258, 400 N.E.2d 897 (1980). We overruled Amato and adopted a bright-line definition of "special proceeding" in Polikoff v. Adam , 67 Ohio St.3d 100, 616 N.E.2d 213 (1993), syllabus (now embodied in R.C. 2505.02(A)(2) ). While we scuttled Amato 's test in Polikoff , in Bell -decided the same day as Polikoff -we made clear that an order affects a substantial right only if the unavailability of immediate appeal would preclude effective relief in the future.
The Limited Need for Immediate Appeal
{¶ 69} Only in the most limited circumstances have we found an immediate interlocutory appeal to be necessary to protect a substantial right. Thus, in Wilhelm-Kissinger at ¶ 11, we determined that the denial of a husband's motion to disqualify his wife's counsel in divorce proceedings was not a final order. We explained that there was no substantial right to disqualify opposing counsel and, germane to our discussion here, that the trial court's order "lacks a * * * permanent effect," id. at ¶ 10. In other words, the effect of the court's order was not irreversible. Nor is the denial of an agency's motion to modify temporary custody of a child to permanent custody irreversible: "While the agency must wait longer for the final outcome of the neglect and dependency action, the continuation of temporary custody does not foreclose appropriate relief in the future." In re Adams , 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶ 44. Such an order, therefore, is not a final order under R.C. 2505.02(B)(2).
{¶ 70} On the other hand, we have concluded that the denial of a protective order in a tax-appeal case was a final order because, we reasoned, the release of confidential information would have "no remedy." Cleveland Clinic Found. v. Levin , 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, ¶ 12. Once disclosed, the confidentiality of the information would be "irretrievably lost." Id. at ¶ 13.
*416 {¶ 71} Further guidance is provided by cases decided under R.C. 2505.02(B)(4), which includes as final orders certain provisional remedies. As with an order in a special proceeding, an order granting or denying a provisional remedy is not a final order unless "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment." R.C. 2505.02(B)(4)(b).
{¶ 72} We recently explained that when "determining whether appeal after final judgment would afford a meaningful or effective remedy, we consider whether *1255 there is a harm such that appeal after final judgment would not ' "rectify the damage." ' " In re D.H. , 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 18, quoting State v. Muncie , 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001), quoting Gibson-Myers & Assocs., Inc. v. Pearce , 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999).
{¶ 73} In In re D.H. , we applied the rule to determine that a juvenile court's order transferring jurisdiction of a case to adult court was not final. The effect of the order, if wrong, could be rectified or reversed following final judgment. Id. at ¶ 19. Our decision in In re D.H. can be contrasted with that in Muncie , in which we concluded that an order compelling the medication of a defendant to restore competency was a final order, Muncie at 452, 746 N.E.2d 1092. The effects of the medication, once administered, could not be reversed. " '[T]he proverbial bell cannot be unrung.' " Id. at 451, 746 N.E.2d 1092, quoting Gibson-Myers & Assocs. at *2.
{¶ 74} Other decisions under R.C. 2505.02(B)(4) accentuate the limited circumstances in which a party would be foreclosed from effective relief by having to wait to appeal until final judgment. The passage of time will not render a future appeal ineffective. In re D.H. at ¶ 19. Nor will the potential for high litigation costs. Gardner v. Ford , 1st Dist. Hamilton No. C-150018, 2015-Ohio-4242, 2015 WL 5968647, ¶ 8. But "an order enforcing a grand-jury subpoena and ordering production of allegedly privileged information is a final order pursuant to R.C. 2505.02(B)(4)." In re Grand Jury Proceeding of John Doe , 150 Ohio St.3d 398, 2016-Ohio-8001, 82 N.E.3d 1115, ¶ 23.
The Unavailability of Immediate Appeal Here Would Not Foreclose Appropriate Relief
{¶ 75} Thomasson does not suggest why she would be foreclosed from relief from any harm visited upon her by the court's appointment of a GAL if she must wait until final judgment before she may appeal. Her analysis stops with the identification of the substantial right involved-her right to due process. But there is no reason that any harm could not be remedied on appeal in the ordinary course. The general rule is that upon reversal and remand to the trial court, proceedings commence at the point when the error occurred. Armstrong v. Marathon Oil Co. , 32 Ohio St.3d 397, 418, 513 N.E.2d 776 (1987) ; accord *417 Montgomery Cty. Commrs. v. Carey , 1 Ohio St. 463 (1853), paragraph one of the syllabus. Thus, if Thomasson were ultimately successful on appeal from final judgment in challenging the appointment of the GAL, the matter would be returned to the trial court for proceedings that would commence at the point when the GAL was appointed.
{¶ 76} Nor does the majority present a compelling explanation of why any harm could not be corrected on appeal after final judgment. Indeed, the majority cites four cases to support its conclusion that a procedurally improper appointment of a guardian violates constitutional due-process guarantees. But in each of these cases, the harm was remedied without resort to an interlocutory appeal-in three, by way of an appeal after final judgment, see In re Joann E. , 104 Cal.App.4th 347, 128 Cal.Rptr.2d 189 (2002) ; State v. Ladd , 139 Vt. 642, 644, 433 A.2d 294 (1981) ; J.H. v. Ada S. McKinley Community Servs., Inc. , 369 Ill.App.3d 803, 308 Ill.Dec. 255, 861 N.E.2d 320 (2006).
{¶ 77} Instead of explaining why any harm could not be corrected on appeal after final judgment, the majority offers only conjecture and a few out-of-context lines cherry-picked from our caselaw. For instance, the majority cites *1256 Wilhelm-Kissinger , 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, in support of its position that the order appointing a GAL for Thomasson is final because it "would have an immediate effect." Majority opinion at ¶ 27. Of course it would. But the question here isn't whether the order has an immediate effect. Rather, we must determine whether that immediate effect would be irreversible. Moreover, our discussion in Wilhelm-Kissinger about the immediacy of the order's effect was not in regard to whether the order affected a substantial right but whether there was a substantial right involved at all:
[A]n order granting disqualification immediately and definitely affects the party it deprives of chosen counsel; the purpose of appealing such an order is to prevent the removal itself. By contrast, an order denying disqualification, standing alone, affects no right held by the unsuccessful movant because there is no substantial right to disqualify opposing counsel.
Wilhelm-Kissinger at ¶ 9.
{¶ 78} The majority also cites Wilhelm-Kissinger to suggest that the trial court's order appointing a GAL must be immediately appealable because the order could not be revisited in the midst of proceedings. But a closer reading of the decision results in the opposite conclusion. In Wilhelm-Kissinger , we distinguished between an order granting a motion to disqualify counsel (a final order) and one denying such a motion (not a final order). In the former case, we reasoned, the decision would not likely be revisited, presumably because counsel, *418 once disqualified, would no longer be participating. In contrast, the denial of a motion to disqualify could be reconsidered during the proceedings and counsel could be removed. Contrary to the majority's suggestion, the court's order appointing a GAL in this case is closer in kind to the denial of a motion to disqualify counsel. The appointment of the GAL could be revisited if he acted inimically to Thomasson's interests.
{¶ 79} The majority speculates about other problems that could arise due to the appointment of a GAL for Thomasson. It frets, "[A] settlement could be negotiated without Carol's independent agreement. Moreover, settlements can include a waiver of the right to appeal." Majority opinion at ¶ 29. Left unexplained by the majority is why, if Thomasson successfully challenged the appointment of the GAL following final judgment, any actions taken by the GAL against her interest would not also be subject to reversal.
{¶ 80} Continuing its litany of potential problems brought on by the appointment of a GAL, the majority suggests that "[t]he tactics used and information revealed by Carol's GAL could not be clawed back-much in the same way that the revelation of confidential information cannot be undone." Id. at ¶ 30. Exactly what tactics used and information revealed is not explained. Presumably, any "tactics used" by the GAL could be replaced by different tactics upon remand following a successful appeal upon final judgment. And any confidential information would be subject to the same rules that apply to confidential information in other cases.
{¶ 81} Anticipating criticism about the speculative nature of its concerns, the majority points to language in Cleveland Clinic , 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, at ¶ 13, in which we discussed "the possibility that confidentiality may be irretrievably lost" and concluded that the possibility made future appeal ineffective. But there we were confronted with actual confidential information that *1257 was the subject of a protective order. Here, we are left with little more than concerns imagined by the majority.
{¶ 82} In short, the majority fails to consider the real question-if Thomasson were made to wait to appeal, would she be foreclosed from an appropriate remedy? In the context of the provisional-remedy exception found in R.C. 2505.02(B)(4), we have distinguished between the order itself and the harm caused by the order: "[T]he irreversible nature of the order alone does not satisfy R.C. 2505.02(B)(4)(b), which requires consideration of whether an appeal after judgment can rectify the damage of an erroneous trial court ruling." Burnham v. Cleveland Clinic , 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 21 (lead opinion). Likewise, Thomasson needs to show that any damage done by the GAL's acts could not be rectified. In none of the scenarios suggested by the *419 majority would Thomasson be foreclosed from remedying potential harm after final judgment.
{¶ 83} The two concurring opinions fare no better in their attempt to justify the court's action today. While the majority opinion at least makes an effort to distinguish Bell , the first concurring opinion chooses to pretend that line of precedent doesn't exist. Instead, that opinion offers a full-throated policy argument for why this case MUST be decided now. The opinion says that if the decision were reversed on appeal after final judgment, there would be a "waste of judicial resources," concurring opinion of O'Connor, C.J., at ¶ 44; never mind that that argument can be made in every case in which an immediate appeal is sought. (One must question whether judicial resources are being conserved here: presumably on remand, the domestic-relations court could simply hold a hearing and again appoint a GAL, likely starting another round of appeals.) The opinion implores that this is not a "routine case" or a "law-school hypothetical devoid of consequence," id. at ¶ 40, criticizes this dissent for ignoring the "practical reality," id. , and demands that we "do our jobs," id. at ¶ 45. I agree with that last part. We should do our jobs. And fundamental to doing our jobs is following the law. Even in hard cases.
{¶ 84} The opinion concurring in judgment only is similarly unpersuasive. Tacitly acknowledging that the majority's result cannot be reconciled with our holdings in Bell and its progeny, the opinion would have us "reexamine" and "diverge" from our holding in Bell . Concurring opinion of Kennedy, J., at ¶ 52. The opinion maintains that R.C. 2505.02(B)(2) does not require determining whether an adequate remedy would exist after final judgment. Instead, any "order that is issued in a special proceeding and that materially or detrimentally influences a substantial right is a final, appealable order." Concurring opinion of Kennedy, J., at ¶ 52. But if such a view were to carry the day, the constitutional "final order" requirement would be eviscerated in any action that constituted a "special proceeding." Think about the various orders that might be issued in a divorce proceeding: an interim custody order, a temporary support order, an order requiring the production of documents, or an order requiring that a child be interviewed by the judge in chambers-to name just a few. Under the opinion, it does not matter whether the harm done could be rectified upon appeal at the end of the case; all of these orders would be immediately appealable. Talk about a recipe for a never-ending divorce. What would be most special about special proceedings is that they could drag on forever.
{¶ 85} The opinion downplays the impact that its new rule would have on our final-order requirement by attempting to *1258 distinguish an order appointing a GAL from other domestic-relations orders. But its effort falls short. Any number of domestic-relations orders made contrary to a party's interest could be said to *420 "detrimentally influence" a right that falls within the broad definition of "substantial right"-that is, "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect," R.C. 2505.02(A)(1). For example, our civil rules provide the procedure for the production of a party's documents. See Civ.R. 26. An order to produce financial statements in a divorce proceeding could be detrimental-that is, harmful-to the rights protected by the Civil Rules. Likewise, an order involving a child could detrimentally affect a parent's right to raise her child-a right we have recognized as " 'essential' " and as a " 'basic civil right,' " In re Murray , 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting Stanley v. Illinois , 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.E.2d 551 (1972).
{¶ 86} That our Civil Rules and statutes provide that some domestic-relations orders are temporary does not change the analysis. Our rules also provide for the appointment of a GAL in domestic-relations cases, see Civ.R. 17(B). And like temporary custody, see R.C. 3109.043, or temporary spousal support, see R.C. 3105.18(B), a GAL's appointment is only for the duration of the case, see State ex rel. Robinson v. Cuyahoga Cty. Court of Common Pleas , 75 Ohio St.3d 431, 662 N.E.2d 798 (1996). Just because we may conclude that the trial court did not follow the proper procedures in appointing the GAL does not render the order immediately appealable.
{¶ 87} Rather than meaningfully distinguishing other domestic-relations orders from the one here, the opinion concurring in judgment only lays bare the problem common to the paths suggested by the majority and concurring opinions: the desired result drives the analysis at the expense of our final-order jurisprudence. The paths are tempting: gloss over the Constitution's final-order requirement so we can immediately fix what happened below. But to bite that apple does more damage than good. As Judge Adams explained in a passage quoted by the United States Supreme Court:
"[I]t would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation. Moreover, to find appealability in those close cases where the merits of the dispute may attract the deep interest of the court would lead, eventually, to a lack of principled adjudication or perhaps the ultimate devitalization of the finality rule * * *."
Richardson-Merrell, Inc. v. Koller , 472 U.S. 424, 440, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), quoting Bachowski v. Usery , 545 F.2d 363, 373-374 (3d Cir.1976). That *421 this may be a hard case does not make it one in which we should abandon the constitutional limits on our authority.
Conclusion
{¶ 88} Because Thomasson can demonstrate no irreversible harm occasioned by the appointment of a GAL, we should require that her appeal await final judgment. I respectfully dissent.