[Cite as *In re B.D.*, 2020-Ohio-4128.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: B.D.

:                 

         APPEAL NO. C-200177
         TRIAL NO. 19-2195Z

:                      *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Appeal Dismissed

Date of Judgment Entry on Appeal: August 19, 2020

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex S. Havlin,* Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Appellant B.D.

**BERGERON, Judge.**

{¶1}   After entertaining a hearing on a "Motion to Divert Pursuant to Safe Harbor," the juvenile court denied any relief, which prompted this appeal by appellant B.D.   The state, however, responded by moving to dismiss the appeal, challenging our jurisdiction based on a lack of a final appealable order.   In this issue of first impression in Ohio, we conclude that the order before us does not constitute a final appealable order, and we therefore must dismiss the appeal for lack of jurisdiction.

I.

{¶2}   Appellant B.D. seeks to appeal from the juvenile court's denial of his motion to divert under R.C. 2152.021(F)'s safe harbor provision.   The General Assembly promulgated R.C. 2152.021(F) in 2012 as part of a broader legislative enactment to address serious issues related to human trafficking.   *See* 2012 Am.Sub.H.B. No. 262, Final Bill Analysis.   Other facets of the legislation required publishing of statistical data related to human trafficking, additional training for peace officers in investigating and handling human trafficking cases, creating a fund for victims of human trafficking, and increased criminal penalties for trafficking in persons.   *Id.*   Therefore, R.C. 2152.021(F) furthered the purposes of the legislation by providing a diversionary program for allegedly delinquent children who might be victims of human trafficking.   Under division (F), where the child was charged with certain acts akin to solicitation or prostitution if committed by an adult, or the court has reason to believe that the child is a victim of human trafficking and the charged act relates to that victimization, the court may schedule a hearing to consider whether to hold a complaint in abeyance "pending the child's successful completion of actions that constitute a method to divert the child from the juvenile court

system[.]" R.C. 2152.021(F)(1).  If the complaint is held in abeyance and the juvenile completes the mandated diversion actions to the court's satisfaction, then "the court shall dismiss the complaint[.]" R.C. 2152.021(F)(5).

{¶3}  In May 2019, B.D. was named in a complaint filed in the Hamilton County Juvenile Court alleging him to be a delinquent child.  A few months later, B.D. filed his "Motion to Divert Pursuant to Safe Harbor" wherein he alleged, pursuant to R.C. 2152.021(F), that he was the victim of human trafficking and the acts with which he was charged were related to his victimization, and requested a hearing on the matter.  The juvenile court held an initial hearing wherein it concluded that it lacked jurisdiction to rule on the motion.  Through a subsequent agreement between the parties, however, the juvenile court moved forward with a hearing to address the merits of the motion, after which it denied B.D.'s motion to divert, declining to find B.D. a victim of human trafficking and denying diversion under R.C. 2152.021(F).  B.D. subsequently appealed that denial of the motion by the juvenile court.

II.

{¶4}  The state challenges our jurisdiction to address B.D.'s appeal, asserting that the denial of the motion to divert lacks the hallmarks of a final order for our review.  The Ohio Constitution, of course, limits appellate jurisdiction to review of "final orders" of lower courts as provided by law.  Ohio Constitution, Article IV, Section 3(B)(2).   For our present purposes, we generally turn to two principal statutes by which appellate courts enjoy jurisdiction to review judgments or final orders, R.C. 2501.02 and 2505.02.  *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 5.  Initially, B.D. concedes that the denial of the motion to divert does not satisfy R.C. 2501.02 based on the absence of any adjudication in this instance.

*See* R.C. 2501.02 ("[T]he court shall have jurisdiction upon an appeal * * * to review * * * the finding, order, or judgment of a juvenile court that a child is delinquent[.]"). Instead, B.D. sets his sights on R.C. 2505.02(B)(2) and (4), maintaining that the denial of the motion to divert satisfies the "final order" requirement under either of these provisions. We consider each in turn.

A.

{¶5} R.C. 2505.02(B) delineates when various types of orders may satisfy the requisite jurisdictional finality. In particular, R.C. 2505.02(B)(2) pertains to an order that "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]" The Ohio Supreme Court explains that an order satisfying R.C. 2505.02(B)(2) must (1) be made at a special proceeding, (2) affect a substantial right, and (3) effectively foreclose the party's ability to protect the substantial right without immediate appellate review. *Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 11. Initially, R.C. 2505.02(A)(2) defines a special proceeding as an action or proceeding specially created by statute and not in existence at law or equity prior to 1853. Because R.C. 2152.021(F)'s safe harbor provision, providing for both a hearing and the juvenile court's ability to hold the complaint in abeyance, was created by statute in 2012 and is a proceeding in juvenile court, this checks the first box under R.C. 2505.02(B)(2). *See In re J.C.*, 4th Dist. Ross No. 15CA3510, 2016-Ohio-5362, ¶ 14, citing *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360, 626 N.E.2d 950 (1994) ("Juvenile court proceedings are special proceedings.").

{¶6} B.D.'s argument stumbles, however, under the second prong, which requires that the order affect a "substantial right." The statute defines a substantial right as "a right that the United States Constitution, the Ohio Constitution, a statute,

4

the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). Adding some gloss to that language, the Ohio Supreme Court explains that a "substantial right is, in effect, a legal right that is enforced and protected by law." *State v. Coffman*, 91 Ohio St.3d 125, 127, 742 N.E.2d 644 (2001).

{¶7} B.D. insists that the potential shelter afforded to certain juveniles under the safe harbor provision implicates such a substantial right. While we have found no caselaw directly on point regarding this issue, courts generally consider various factors in determining whether a statute protects a legal right so as to satisfy R.C. 2505.02(B)(2)'s "substantial right" requirement. Typically, where the statute is permissive, "conferr[ing] substantial discretion [to a court] while simultaneously making no provision for appellate review," courts decline to find a legal right at stake for purposes of R.C. 2505.02(A)(1) and (B)(2). *Id.* at 128 (no legal right to shock probation under statute and therefore no final appealable order existed). In other words, the more permissive and discretionary the statute at hand, the steeper the hill to climb to establish a "substantial right."

{¶8} Without any extant caselaw, we find persuasive decisions involving R.C. 2951.041's "Intervention in lieu of conviction." Similar to the safe harbor provision, R.C. 2951.041 allows for intervention in certain cases where drugs or alcohol constituted a factor leading to the commission of the criminal offense, which entitles a trial court to grant intervention to certain qualifying offenders. R.C. 2951.041 (A) and (C). If the court determines that the offender qualifies, then he or she receives an intervention plan, and upon successful completion, the trial court must dismiss the proceedings against the offender. R.C. 2951.041 (D) and (E).

{¶9} With regard to the finality of an order arising under R.C. 2951.041 though, courts uniformly reject the notion that intervention in lieu of conviction

satisfies a final order under R.C. 2505.02(B)(2), largely hinging their determinations on the permissive nature of the statute. R.C. 2951.041 "does not create a legal right to intervention in lieu of conviction. Rather, the statute is permissive in nature and provides that the trial court *may*, in its discretion, grant the defendant an opportunity to participate[.]" (Emphasis sic.) *State v. Dempsey*, 8th Dist. Cuyahoga No. 82154, 2003-Ohio-2579, ¶ 9; *State v. Roome*, 2017-Ohio-4230, 92 N.E.3d 59, ¶ 7 (12th Dist.) (noting that "even when an offender is eligible * * * the statute does not create a legal right[.]"). Appellate courts repeatedly recognize that the statute's permissive nature and substantial discretion bestowed on the trial court indicate the lack of a substantial right at issue for purposes of R.C. 2505.02(B)(2). *See State v. Bellman*, 9th Dist. Lorain No. 15CA010525, 2015-Ohio-2303, ¶ 10 (noting that intervention in lieu of conviction is not a right provided to defendants and therefore not a final appealable order); *State v. Radebaugh*, 3d Dist. Marion No. 9-14-13, 2015-Ohio-1186, ¶ 5 (reiterating permissive nature of R.C. 2951.041).

{¶10} Just as with intervention in lieu of conviction, a survey of the language of R.C. 2152.021(F) confirms the permissive nature and the juvenile court's wide discretion on the matter. The statute provides that a juvenile court, any time after the filing of the complaint and before adjudication, "may" convene a hearing to determine whether to hold the complaint in abeyance if certain factors apply. R.C. 2152.021(F)(1). Similarly, if the juvenile court decides to proceed with a hearing, the decision to hold the complaint in abeyance remains discretionary: "If after a hearing the court decides to hold the complaint in abeyance * * *." R.C. 2152.021(F)(4). B.D. attempts to distinguish the intervention in lieu of conviction statute by asserting that the safe harbor provision's language requiring that the juvenile court "shall promptly appoint a guardian ad litem" is illustrative of a substantial right. R.C.

6

2152.021(F)(3). This mandate, however, only arises *if* the juvenile court decides to hold a hearing in the first place. R.C. 2152.021(F)(3). Thus, while certain obligations arise if a hearing is held, the overall scheme of part (F) is permissive, and the decision to hold the complaint in abeyance falls within the discretion of the juvenile court.

{¶11} Just as with intervention in lieu of conviction, we find that the permissive and discretionary nature of division (F) reveals the absence of any "substantial right" at play for purposes of R.C. 2505.02(B)(2) and appellate review. *See Bellman* at ¶ 9; *Coffman*, 91 Ohio St.3d at 127, 742 N.E.2d 644 (noting that no legal right for purposes of R.C. 2505.02(B)(2) created where terms of the statute at issue were permissive in nature, leaving the decision to grant or deny the motion within the plenary power of the court). And this conclusion is underscored by the statute's conspicuous lack of any provision for appellate review. *Coffman* at 128 (no final appealable order where statute granted the trial court substantial discretion "while simultaneously making no provision for appellate review."). The General Assembly set the juvenile courts adrift with very few guideposts, but if it wanted to facilitate interlocutory review, it could have added such a provision to the statute.

B.

{¶12} Alternatively, B.D. posits that the denial of his motion to divert under the safe harbor provision constitutes a final appealable order under R.C. 2505.02(B)(4). To satisfy R.C. 2505.02(B)(4), an order must (1) constitute a provisional remedy, (2) determine the action with respect to the provisional remedy and prevent a judgment, and (3) prevent the appealing party from meaningful or effective review if delayed until after a final judgment. *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, at ¶ 11; R.C. 2505.02(B)(4)(a-b). In determining

whether the juvenile court's denial of the motion to divert satisfies R.C. 2505.02(B)(4), we find that it falters at a threshold level because a proceeding under R.C. 2152.021(F) does not constitute a provisional remedy.

{¶13} R.C. 2505.02(A)(3) defines a provisional remedy as "a proceeding ancillary to an action," including among other things "a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence" and certain other prima-facie showings as required by statute. A touchstone of an ancillary proceeding for R.C. 2505.02(A)(3) purposes is a proceeding that is attendant upon or aids another proceeding. *State v. Muncie*, 91 Ohio St.3d 440, 449, 746 N.E.2d 1092 (2001) (determining that petition for forced medication constituted a provisional remedy). Ancillary proceedings are "separate procedures tied to a main action, acting in furtherance of the main action but with their own lives. Though owing their existence to the underlying action they are definable offshoots from the main action." *Community First Bank & Trust v. Dafoe*, 108 Ohio St.3d 472, 2006-Ohio-1503, 844 N.E.2d 825, ¶ 26 (holding that a court's order staying an action is not a final order under R.C. 2505.02).

{¶14} B.D. maintains that the motion to divert pursuant to the safe harbor provision is akin to a preliminary injunction or the bindover process to adult court, and therefore satisfies the provisional remedy requirement. The Ohio Supreme Court recently confirmed that both mandatory and discretionary bindover proceedings constitute provisional remedies ancillary to subsequent adult court proceedings. *In re D.H.* at ¶ 13 (finding that discretionary-bindover hearing is ancillary to the adult-court proceedings which would determine the juvenile's guilt and impose a sentence); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 23 (determining that a mandatory bindover hearing in the juvenile

8

court is ancillary to grand jury proceedings and to adult criminal prosecution and therefore a provisional remedy). But here, a hearing on a motion to divert pursuant to R.C. 2152.021(F) is not part of the bindover process. *See* R.C. 2152.021(F)(1) ("At any time after the filing of a complaint alleging that a child is a delinquent and before adjudication, the court may hold a hearing to determine whether to hold the complaint in abeyance[.]"). Nothing within division (F) implicates a proceeding that is ancillary to being prosecuted as an adult; in fact, successful completion of the diversionary plan results in dismissal of the juvenile court proceedings. R.C. 2152.021(F)(5) ("If * * * the child complies with the conditions of abeyance and completes the diversion actions to the court's satisfaction, the court shall dismiss the complaint[.]").

{¶15} Similarly, we disagree with B.D.'s classification of the proceedings as analogous to a preliminary injunction. As the analysis above confirms, R.C. 2152.021(F) better resembles a proceeding akin to intervention in lieu of conviction, which is not considered an ancillary proceeding constituting a provisional remedy under R.C. 2505.02(B)(4). *See Bellman,* 9th Dist. Lorain No. 15CA010525, 2015-Ohio-2303, at ¶ 11, quoting *Dafoe* at ¶ 30 ("[I]ntervention in lieu of conviction is not 'a separate matter from the trial on the merits' or 'a proceeding with its own life.' ").

{¶16} Moreover, under R.C. 2152.021(F)(4) the juvenile court may hold a complaint in abeyance for only a limited period (initially 90 days, with a maximum of 270 days) while the juvenile engages in the diversion program. But if the juvenile fails to complete the diversion activities, then "the court shall proceed upon the complaint," and conversely, if the juvenile completes the diversion actions to the court's satisfaction, it results in dismissal of the complaint. R.C. 2152.021(F)(5). Therefore, in this regard, the statute evokes parallels to both a stay and a motion to

dismiss, which generally do not constitute provisional remedies. *See Dafoe*, 108 Ohio St.3d 472, 2006-Ohio-1503, 844 N.E.2d 825, at ¶ 28 (distinguishing a preliminary injunction from a stay where "a stay ceases activity on a case, a preliminary injunction proceeding is parallel, expedited, and separate from the main action."); *State v. Tate,* 179 Ohio App.3d 71, 2008-Ohio-5686, 900 N.E.2d 1018, ¶ 21-22 (7th Dist.) (noting that motion to dismiss "does not aid or accompany the criminal action * * * it is a claim for relief that seeks to terminate the action" when the basis for the dismissal is not automatic). For these reasons, we disagree with B.D.'s contentions that R.C. 2152.021(F) constitutes a provisional remedy. Ultimately, it is not a "separate procedure[] tied to a main action" or a "definable offshoot[]" thereof. *See Dafoe* at ¶ 26. We therefore conclude that no final order exists pursuant to R.C. 2505.02(B)(4).

{¶17} In light of the foregoing, we find that the juvenile court's denial of B.D.'s motion to divert pursuant to R.C. 2152.021's safe harbor provision fails to satisfy the requisites of a final appealable order. We therefore lack jurisdiction and accordingly dismiss the appeal.

*Appeal dismissed.*

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:
    The court has recorded its own entry this date.