[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of Y.E.F.*, Slip Opinion No. 2020-Ohio-6785.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6785

IN THE MATTER OF THE ADOPTION OF Y.E.F.

IN THE MATTER OF THE ADOPTION OF M.M.F.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of Y.E.F.*, Slip Opinion No. 2020-Ohio-6785.]

*Constitutional law—Because indigent parents facing the termination of their parental rights in adoption proceedings in probate courts are similarly situated to indigent parents facing termination of their parental rights in permanent-custody proceedings in juvenile courts, indigent parents in adoption proceedings must be afforded the same right to appointed counsel that is statutorily provided to indigent parents in permanent-custody proceedings—Court of appeals' judgment reversed and cause remanded to probate court.*

(Nos. 2019-0420 and 2019-0421—Submitted January 28, 2020—Decided December 22, 2020.)

APPEALS from the Court of Appeals for Delaware County,
Nos. 18 CAF 09 0069, 2019-Ohio-448 and 18 CAF 09 0070, 2019-Ohio-449.

---

**SYLLABUS OF THE COURT**

Indigent parents are entitled to counsel in adoption proceedings in probate court as a matter of equal protection of the law under the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution.

---

**DONNELLY, J.**

{¶ 1} Although indigent parents faced with losing parental rights in a custody proceeding in juvenile court are entitled to appointed counsel, indigent parents faced with losing parental rights in an adoption proceeding in probate court are not entitled to appointed counsel. Appellant, E.S., argues that this disparate treatment is a violation of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution. We agree.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} E.S. is the mother of twin boys, Y.E.F. and M.M.F. In April 2015, when the boys were under a year old, their father, R.H., fled their home to avoid apprehension for federal criminal charges. With no funds, because R.H. had allegedly emptied their bank account, E.S. asked R.H.'s sister, C.F., and C.F.'s husband, D.F., to care for her sons while she sought shelter for herself and her daughter. E.S. contends that the arrangement with C.F. and D.F. was supposed to be temporary. But in May 2015, C.F. filed a complaint in juvenile court for allocation of parental rights.

{¶ 3} C.F. was awarded temporary custody, and then, based on an "agreed judgment entry" dated September 9, 2016, C.F. and D.F. were granted final custody. The entry set E.S.'s and R.H.'s child-support obligations at zero. E.S. received visitation rights, but only at the discretion of C.F. and D.F., who denied

her visitation requests based on their belief that E.S. had a substance-abuse problem and could not provide a safe environment at her home for the boys.

{¶ 4} In April 2018, C.F. and D.F. filed petitions in the Delaware County Probate Court to adopt Y.E.F. and M.M.F., alleging that the consent of E.S. and R.H. was not required because neither parent had had more than de minimus contact with the boys nor provided financial support in the year preceding the filing of the adoption petitions. On August 22, 2018, E.S. filed a request for appointed counsel and attached a letter from the Legal Aid Society of Columbus raising equal-protection and due-process arguments in support of her request. The court denied E.S.'s request on August 27, and instead confirmed that it would proceed with a previously scheduled hearing on August 29 to determine whether E.S.'s consent to the boys' adoption was necessary.

{¶ 5} At the hearing, E.S. struggled to understand the process. After her own testimony (elicited through cross-examination by C.F. and D.F.'s attorney) and that of C.F. and D.F., E.S. vocalized her realization that she was in over her head, stating, "I didn't know that this would be a whole cross-examination and the whole thing would take place. Because maybe I should get an attorney, because I don't know how to cross-examine." The magistrate disregarded her request and the hearing proceeded. At the conclusion of the hearing, the probate court continued the case for further hearing, which it set for September 12, 2018. On September 10, E.S. appealed the court's August 27 denial of her request for appointed counsel.

{¶ 6} The Fifth District Court of Appeals affirmed, concluding that equal-protection and due-process guarantees are inapplicable to requests for appointed counsel in adoption cases brought by private petitioners. We granted E.S.'s discretionary appeals, 155 Ohio St.3d 1467, 2019-Ohio-2100, 122 N.E.3d 1298, 155 Ohio St.3d 1467, 2019-Ohio-2100, 122 N.E.3d 1297, and consolidated the cases for review, 156 Ohio St.3d 1401, 2019-Ohio-2126, 123 N.E.3d 1023, 156 Ohio St.3d 1401, 2019-Ohio-2126, 123 N.E.3d 1022.

## II. ANALYSIS

### A. R.C. 2505.02(B)(2)

{¶ 7} After oral argument, this court sua sponte requested that the attorney general file an amicus brief addressing, among other issues, whether the probate court's denial of E.S.'s request for appointment of counsel constituted a final, appealable order. 157 Ohio St.3d 1409, 2019-Ohio-3749, 131 N.E.3d 87; 157 Ohio St.3d 1409, 2019-Ohio-3749, 131 N.E.3d 88. Accordingly, we will address that issue first.

{¶ 8} Pursuant to R.C. 2505.02(B)(2), an order is a final, appealable order when it "affects a substantial right made in a special proceeding." Adoption proceedings are "special proceeding[s]," *see In re Adoption of Greer*, 70 Ohio St.3d 293, 297, 638 N.E.2d 999 (1994), a point that the attorney general concedes in his amicus curiae brief urging affirmance of the Fifth District's judgment. Thus, the question that remains for purposes of resolving this issue is whether E.S.'s claim that she has a right to counsel in these adoption proceedings involves a substantial right. We conclude that it does. *See Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 8-11 (observing that we had previously held that orders *disqualifying* counsel were immediately appealable), citing *Russell v. Mercy Hosp.*, 15 Ohio St.3d 37, 39, 472 N.E.2d 695 (1984); *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, syllabus.

{¶ 9} Moreover, E.S. has a "fundamental liberty interest" in parenting her children, grounded in the Fourteenth Amendment to the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *see In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). This fundamental liberty interest is also a substantial right under R.C. 2505.02(B)(2). *See* R.C. 2505.02(A)(1) (defining "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect"); *see also Thomasson v.*

*Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 13, 21. The entire adoption proceeding is aimed at determining whether E.S. can continue to have a role in the lives of her children.

{¶ 10} In *Guccione v. Hustler Magazine, Inc.*, 17 Ohio St.3d 88, 89, 477 N.E.2d 630 (1985), we held that "an order denying permission for out-of-state counsel (otherwise competent) to represent a litigant is a final appealable order." We reasoned that effective review of the denial after the case reached completion in the trial court would not be possible because "[t]he burden on that party at the end of the case to show that he was prejudiced would in effect be an 'insurmountable burden.' " *Id*. at 90, quoting *Armstrong v. McAlpin*, 625 F.2d 433, 441 (2d Cir.1980). This case is potentially worse because, without adequate funds for an attorney, E.S. is left to protect a fundamental right without *any* counsel, not merely without her preferred counsel.

{¶ 11} Without counsel, E.S.'s acknowledged inability to understand the process and to properly cross-examine, and her likely inability to properly preserve issues for appeal, among other limitations common among nonattorneys, will render effective appellate review unlikely, perhaps even impossible. *See State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 49, 693 N.E.2d 794 (1988) (recognizing that a party "lack[ed] an adequate remedy in the ordinary course of law to challenge [the lower court's] refusal to appoint her counsel").

{¶ 12} We conclude that the denial of E.S.'s request for appointed counsel affects a substantial right in a special proceeding. Accordingly, the trial court's order denying E.S.'s request for appointed counsel is a final, appealable order pursuant to R.C. 2505.02(B)(2).

### B. R.C. 2151.352

{¶ 13} R.C. 2151.352 provides, "A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the

Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided * * *." We have stated that R.C. 2151.352 means that indigent parents "are entitled to appointed counsel in all juvenile proceedings," which includes custody proceedings. *Asberry* at 48; *see also In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, 95 N.E.3d 394, ¶ 5 ("a parent has the right to counsel at a permanent-custody hearing, including the right to appointed counsel if the parent is indigent"), citing R.C. 2151.352.

{¶ 14} Indigent parents in adoption proceedings in probate court, governed by R.C. Chapter 3107, are not statutorily entitled to appointed counsel. Although this court used broad language in *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985), stating "R.C. 2151.352 and Juv.R. 4(A) provide for the appointment of counsel in cases where parental rights are subject to termination," that case involved a juvenile-court proceeding and did not extend to adoption proceedings. E.S. argues that Ohio denied her equal protection of the laws when it failed to provide appointed counsel in the underlying adoption proceedings involving her twin sons. She contends that there is no material substantive difference between a custody proceeding in juvenile court, in which a parent is at risk of losing custody of her child, and an adoption proceeding in probate court, in which a parent faces termination of her parental rights. Even if the proceedings involving parental rights occur in different courts, E.S. asserts that the same interest is at risk: the parent-child relationship.

### C. Equal Protection

### 1. The Fourteenth Amendment

{¶ 15} The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Ohio Constitution likewise guarantees to the people the equal protection of the laws; it states, "All political power is inherent in the people. Government is instituted for their equal protection and benefit." Article

I, Section 2, Ohio Constitution. The essence of the Equal Protection Clauses "require[s] that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 6; *see also State ex rel. Patterson v. Indus. Comm.*, 77 Ohio St.3d 201, 204, 672 N.E.2d 1008 (1996) (the constitutional guarantee of equal protection requires that "laws are to operate equally upon persons who are identified in the same class").

{¶ 16} The United States Constitution, when applicable to the states, provides a floor of protection with respect to individual rights and civil liberties; states may not deny individuals the minimum level of protection mandated by the federal constitution. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 42, 616 N.E.2d 163 (1993). States possess authority to grant broader protections under their own constitutions than those granted by the federal constitution. *Id.* at 41-42.

{¶ 17} The Fourteenth Amendment's guarantee of equal protection does not forbid the state from treating different classes of persons differently. *Eisenstadt v. Baird*, 405 U.S. 438, 446-447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), citing *Reed v. Reed*, 404 U.S. 71, 75-76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). But a classification must not be arbitrary; it " 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *Reed* at 76, quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

{¶ 18} In determining whether state legislation violates the federal Equal Protection Clause, we " 'apply different levels of scrutiny to different types of classifications.' " *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 13, quoting *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). "[A]ll statutes are subject to at least rational-basis review, which requires that a statutory classification be rationally related to a legitimate

government purpose." *Id.*, citing *Clark* at 461. But when a statutory classification affects a fundamental constitutional right, we conduct a more demanding strict-scrutiny inquiry, which requires that the classification "be narrowly tailored to serve a compelling state interest." *Id.* When a statutory classification affects a fundamental right, "the state must assume the heavy burden of proving that the legislation is constitutional." *Beatty v. Akron City Hosp.*, 67 Ohio St.2d 483, 492, 424 N.E.2d 586 (1981), citing *Eisenstadt* at 447, fn. 7.

### 2. Involuntary Termination of a Parent-Child Relationship

{¶ 19} Ohio law provides alternative statutory proceedings that may result in the involuntary termination of a parent-child relationship. Under R.C. 2151.414, a juvenile court may grant a motion for permanent custody of a child; a grant of permanent custody permanently divests the parents of their parental rights. *Id.* Alternatively, a parent-child relationship may be terminated by a judicial decree granting a private adoption in proceedings before a probate court under R.C. Chapter 3107. A final decree of adoption has the effect of terminating the biological parents' parental rights and creating new parental rights in the adoptive parents. R.C. 3107.15(A). Whether in custody proceedings in juvenile court or in adoption proceedings in probate court, parents who contest the involuntary and permanent termination of their parental rights fight the same battle against " 'the family law equivalent of the death penalty.' " *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 20} In proceedings in juvenile court under R.C. Chapter 2151, the child and the child's parents are statutorily entitled to legal representation, including a right to appointed counsel if they are indigent, at all stages of the proceedings. R.C. 2151.352. An indigent parent who opposes the termination of his or her parental rights in adoption proceedings in probate court, on the other hand, has no statutory right to appointed counsel. Thus, Ohio's statutory scheme distinguishes between

indigent parents facing termination of their parental rights in juvenile court and indigent parents facing termination of their parental rights in adoption proceedings in probate court, affording only the former class of parents the right to appointed counsel.

{¶ 21} E.S. maintains that Ohio's different treatment of indigent parents facing termination of their parental rights in juvenile-court proceedings and indigent parents facing termination of their parental rights in probate-court proceedings violates federal and state constitutional guarantees of equal protection.

### 3. Lower-Court Decision

{¶ 22} The court of appeals concluded that equal protection does not require that indigent parents subject to losing parental rights in an adoption proceeding in probate court be afforded appointed counsel. First, it determined that equal-protection concerns are not applicable in adoption cases because the proceedings are initiated by private parties and "[t]he Equal Protection Clause provides protection against governmental, not private, action." 2019-Ohio-448 at ¶ 24; 2019-Ohio-449, 130 N.E.3d 1044, at ¶ 22, citing *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Further, even assuming the Equal Protection Clause is a relevant consideration here, the court of appeals observed that "adoption and permanent custody are 'distinct concepts under Ohio law.' " 2019-Ohio-448 at ¶ 24; 2019-Ohio-449, 130 N.E.3d 1044, at ¶ 24, quoting *In re Adoption of J.L.M-L*, 5th Dist. Muskingum No. CT2016-0030, 2017-Ohio-61, ¶ 12. The court reasoned that "adoption and permanent custody are each contained within different statutes with different purposes and each with different tests involved before a court can grant them. Thus, biological parents in adoption actions and permanent custody actions are not 'similarly situated individuals [that] are treated differently.' " 2019-Ohio-448 at ¶ 24; 2019-Ohio-449, 130 N.E.3d 1044, at ¶ 24.

**{¶ 23}** We declined jurisdiction in *J.L.M-L. See* 148 Ohio St.3d 1446, 2017-Ohio-1427, 72 N.E.3d 658. Thus, the court of appeals was appropriately following its own precedent. Nevertheless, for the following reasons, we conclude that equal protection is applicable in this context, and further, that indigent parents in custody proceedings in juvenile courts and indigent parents in adoption proceedings in probate courts are similarly situated.

### 4. Application of Equal-Protection Standards

#### a. State Action

**{¶ 24}** "The Constitution's protections of individual liberty and equal protection apply in general only to action by the government." *Edmonson* at 619, citing *Natl. Collegiate Athletic Assn. v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). An act that violates the federal Constitution when committed by a government actor does not necessarily also violate the Constitution when committed by a private actor. *Id.* And because the Fourteenth Amendment is directed at the states, "it can be violated only by conduct that may be fairly characterized as 'state action.' " *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). However, the Fifth District's focus on the character of the underlying adoption proceedings and that private parties initiated these proceedings is misplaced.

**{¶ 25}** E.S. challenges the General Assembly's distribution of the right to appointed counsel among indigent parents. The statutory entitlement to appointed counsel, which the General Assembly extended to parents facing termination of their parental rights in juvenile court but not to parents facing termination of their parental rights in probate court, stems from legislative action. Enactment of legislation qualifies as state action, *see In re Adoption of L.T.M.*, 214 Ill.2d 60, 74-75, 824 N.E.2d 221 (2005), and it is that state action, not any conduct by a private party, that purportedly justified the trial court's denial of E.S.'s request for appointed counsel.

{¶ 26} Additionally, a challenge to the extinguishment of a parent-child relationship is a challenge to state action, even when a private party initiates the judicial process, because only the state has the power to extinguish the parent-child relationship. *M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), fn. 8. Even though private parties may initiate adoption proceedings, adoption itself is a "function of the state" and may be accomplished only by the exercise of government authority. *State ex rel. Portage Cty. Welfare Dept. v. Summers*, 38 Ohio St.2d 144, 150, 311 N.E.2d 6 (1974). The mere fact that private parties initiated the adoption proceedings in which E.S. requested appointed counsel to defend her parental rights does not demonstrate the absence of state action, so as to preclude her equal-protection challenge. The Fifth District erred in holding otherwise.

### b. Similarly Situated Parents

{¶ 27} The Fifth District independently rejected E.S.'s equal-protection challenge based on its determination that biological parents facing termination of their parental rights in adoption proceedings are not similarly situated to biological parents facing termination of their parental rights in permanent-custody proceedings. 2019-Ohio-448 at ¶ 24; 2019-Ohio-449, 130 N.E.3d 1044, at ¶ 24. The Equal Protection Clauses in both the United States and Ohio Constitutions require that state laws treat similarly situated individuals in a similar manner. *McCrone*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 6. In other words, the law must "operate equally upon persons who are identified in the same class." *Patterson*, 77 Ohio St.3d at 204, 672 N.E.2d 1008. "The comparison of only similarly situated entities is integral to an equal protection analysis," *GTE N., Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-Ohio-2984, 770 N.E.2d 65, ¶ 22, as equal protection does not " 'require things which are different in fact * * * to be treated in law as though they were the same,' " (ellipsis added in *T. Ryan Legg*) *T. Ryan Legg Irrevocable Trust v. Testa*, 149 Ohio St.3d 376, 2016-Ohio-8418, 75 N.E.3d

184, ¶ 73, quoting *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940).

{¶ 28} The Fifth District based its conclusion that biological parents in adoption proceedings are not similarly situated to biological parents in permanent-custody proceedings on the fact that the "concepts of adoption and permanent custody are each contained within different statutes with different purposes and each with different tests involved before a court can grant them." 2019-Ohio-448 at ¶ 24; 2019-Ohio-449, 130 N.E.3d 1044, at ¶ 24. Despite those differences, however, indigent parents in both proceedings face the same termination of their fundamental constitutional right to parent their children as a result of judicial action.

{¶ 29} We conclude that, under Ohio's dual statutory scheme for terminating parental rights, indigent parents facing termination of their parental rights by adoption in probate court are similarly situated to indigent parents facing termination of their parental rights in juvenile court. *See In re Adoption of A.W.S. and K.R.S.*, 377 Mont. 234, 238, 339 P.3d 414 (2014) (parents facing the loss of parental rights in either state-initiated abuse-and-neglect proceedings or in adoption proceedings initiated by private parties are similarly situated); *In re Adoption of K.A.S., D.S., and B.R.S.*, 499 N.W.2d 558, 566 (N.D.1993); *In the Interest of S.A.J.B.*, 679 N.W.2d 645, 650-651 (Iowa 2004) (citing *K.A.S.* with approval); *In re Adoption of Fanning*, 310 Or. 514, 522-523, 800 P.2d 773 (1990).

### c. Strict Scrutiny

{¶ 30} The rejection of the Fifth District's dual rationales—that this case does not implicate the constitutional guarantees of equal protection because adoption proceedings do not involve state action and because E.S. is not similarly situated to a parent facing termination of her parental rights in a permanent-custody proceeding in juvenile court—is but a prelude to the substantive application of the Equal Protection Clause. Because Ohio's statutory distinction between indigent parents facing the involuntary termination of their parental rights based on the type

of proceeding in which they challenge such a termination implicates a fundamental right, the Equal Protection Clause requires equal treatment of those two classes of parents absent a compelling interest to treat them differently and a statutory mechanism narrowly tailored to address only that interest. *Santosky*, 455 U.S. at 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (the right to parent one's own child is a "fundamental liberty interest"); *see also In re Murray*, 52 Ohio St.3d at 157, 556 N.E.2d 1169, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977) ("suitable persons have a 'paramount' right to the custody of their minor children")

{¶ 31} The state has offered no compelling justification for affording parents facing termination of their parental rights in juvenile court a right to appointed counsel while withholding that benefit from parents facing termination of their parental rights through adoption proceedings in probate court. The putative adoptive parents, as appellees here, did not file a merit brief in this court, and the attorney general does not purport to demonstrate a compelling state interest and instead argues that rational-basis review applies. The state interest proffered by the attorney general—the "responsible management of taxpayer funds"—is a legitimate state interest. *See Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 353-354, 639 N.E.2d 31 (1994). But it is not a compelling interest, especially when compared to the fundamental right at stake.

{¶ 32} Moreover, the appointment of state-funded counsel for indigent parents in adoption cases will serve purposes—beyond not violating equal protection—that are both legitimate and salutary. It will help ensure that a probate court's decision is in the best interests of the child by testing the relevant facts and law in the crucible of the adversarial process. *See In re Adoption of J.E.V.*, 226 N.J. 90, 109-110, 141 A.3d 254 (2016). It will also help ensure "that the adoption process is completed in an expeditious manner," which we have stated is in the best interests of children. *In re Adoption of Zschach*, 75 Ohio St.3d 648, 651, 665

N.E.2d 1070 (1996). Finally, it is probable that appointed counsel for indigent parents will lower the risk of error, just as it does now in juvenile-court proceedings.

### III. CONCLUSION

{¶ 33} We conclude that R.C. 2151.352 is unconstitutionally underinclusive as applied to indigent parents facing the loss of their parental rights in probate court. Instead of declaring the statute unconstitutional on its face, and significantly disrupting the multifarious juvenile-court proceedings in the state, we declare that indigent parents are entitled to counsel in adoption proceedings in probate court as a matter of equal protection of the law under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution.

{¶ 34} Because we base our conclusion on the Equal Protection Clauses of the United States and Ohio Constitutions, we need not address her claims that she was deprived of due process under the United States Constitution and the Ohio Constitution. Therefore, we reverse the judgment of the Fifth District Court of Appeals and remand this cause to the Delaware County Probate Court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY and FRENCH, JJ., concur.

FISCHER, J., concurs in judgment only.

DEWINE, J., dissents, with an opinion joined by STEWART, J.

––––––––––––––––

**DEWINE, J, dissenting.**

{¶ 35} This case comes to us by way of an interlocutory appeal. In most situations, appellate courts lack jurisdiction over interlocutory appeals—the ordinary rule is that a party must pursue all claims of error in one appeal following trial on the merits. Today, the majority provides only a cursory analysis of the

jurisdictional question and then announces that the legislature has violated the equal-protection guarantees of the United States and the Ohio Constitutions by providing appointed counsel for indigent parents in permanent-custody proceedings in juvenile courts without, at the same time, providing appointed counsel for indigent parents in adoption proceedings held in probate courts. As eager as the majority may be to get to the merits, we cannot do so without a proper grant of jurisdiction. Because I do not believe that the trial court's interlocutory order was immediately appealable, I would vacate the decision of the court of appeals and order the matter dismissed for lack of appellate jurisdiction. I dissent from the majority's decision to do otherwise.

### *The Order at Issue*

{¶ 36} The order being appealed was issued in an adoption proceeding involving twin siblings. A week before the proceeding was scheduled to begin, E.S., the biological mother of the twins, filed a request for the appointment of counsel. The probate court denied the request and the adoption hearing proceeded as scheduled. Both potential adoptive parents testified, and E.S. was called to the stand and cross-examined. Near the end of the proceeding, E.S. indicated to the court that she would like a continuance "[t]o possibly get an attorney." The court continued the case based on E.S.'s oral motion. Before the hearing resumed, however, E.S. appealed the probate court's denial of her request for the appointment of counsel.

{¶ 37} The Fifth District Court of Appeals affirmed the probate court's order denying E.S.'s request for appointed counsel but never addressed its jurisdiction over the interlocutory appeal. After oral argument in this court, we asked the parties to provide supplemental briefing addressing whether the probate court's denial of E.S.'s request constituted a final, appealable order. 157 Ohio St.3d 1409, 2019-Ohio-3749, 131 N.E.3d 87.

### *Ohio's Final-Order Requirement*

{¶ 38} The Ohio Constitution grants the courts of appeals "such jurisdiction as may be provided by law to review * * * judgments or final orders." Ohio Constitution, Article IV, Section 3(B)(2). The "provided by law" part of this constitutional grant is effectuated by R.C. 2505.02, which defines what constitutes a final order. "An appellate court can review only final orders, and without a final order, an appellate court has no jurisdiction." *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 10, citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9, citing *Gen. Acc. Ins. Co v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

{¶ 39} The requirement of a final order reflects the general principle that "all judgments in a case should be reviewed in a single appeal." *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 9, citing *Anderson v. Richards*, 173 Ohio St. 50, 55, 179 N.E.2d 918 (1962); *see also Ashtabula v. Pub. Util. Comm.*, 139 Ohio St. 213, 215, 39 N.E.2d 144 (1942); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (the "general rule [is] that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of [trial] court error at any stage of the litigation may be ventilated" [citation omitted]).

{¶ 40} The final-order requirement is a long-standing feature of appellate jurisdiction with its origins in the English common law. *See* Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539, 541-544 (1932). By requiring most appeals to wait until the conclusion of litigation in the trial court, the rule emphasizes the deference that appellate courts owe to the trial judge and "minimiz[es] appellate-court interference with the numerous decisions [a trial judge] must make in the prejudgment stages of litigation." *Flanagan v. United States*, 465 U.S. 259, 263-264, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). It also

prevents the harassment and excessive costs that could result from successive appeals during a single piece of litigation. *Id.* at 264. And by preventing piecemeal appeals, the rule promotes efficient judicial administration. *Id.*

{¶ 41} E.S. argues that this case is an exception to the general principle because the probate court's denial of her motion for the appointment of counsel falls within the definition of "final order" provided in R.C. 2505.02(B)(2). That provision defines "[a]n order that affects a substantial right made in a special proceeding" as a final order. *Id*.

{¶ 42} Everyone agrees that an adoption proceeding is a "special proceeding:" it is an action "specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." *See* R.C. 2505.02(A)(2). The issue is whether the probate court's order "affects a substantial right."

### *If an Order Does Not Foreclose Appropriate Relief in the Future, It Does Not Affect a Substantial Right*

{¶ 43} Our precedent provides the framework for answering this question. In *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993), we held that "[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." To meet this requirement, an order has to be one that "must be appealed immediately or its effect will be irreversible." *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 10. An order's effect is irreversible if it cannot be meaningfully or effectively remedied by an appeal following a final judgment. *See In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 18.

{¶ 44} In most cases, an appeal following final judgment at the conclusion of the case will provide a sufficient remedy for a trial error. The appellate court can simply order a new trial. Certain things—such as litigation cost, inconvenience to the parties, and potential harms caused by delays in resolution—are almost

always part and parcel of waiting for final judgment before an appeal. But these types of harms are inherent in the final-order rule and have never been considered to be the type of irreversible effects requiring immediate appeal. *See, e.g.*, *In re D.H.* at ¶ 21 ("passage of time and speculation about its effect" will not render appeal after final judgment ineffective); *Gardner v. Ford*, 1st Dist. Hamilton No. C-150018, 2015-Ohio-4242, ¶ 8 ("the prospect of high litigation costs" that might be avoided by an immediate appeal does not make appeal following final judgment ineffective).

{¶ 45} In only a very limited number of cases have we concluded that a trial error could not be fixed following an appeal from a final judgment. These are cases in which " 'the proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." *State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001), quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999). The prototypical case is the administration of forced medication to an incompetent criminal defendant; reversal on appeal could not remedy the effects of the medication once administered. *Id*. at 451-452. Similarly, an immediate appeal is available to protect the right against double-jeopardy because the constitutional guarantee protects against being placed on trial for a second time: absent an immediate appeal, the right cannot be vindicated. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 53-59. And we have found the denial of an order preventing disclosure of confidential information to be immediately appealable, because once the information was disclosed, there could be "no remedy," the confidentiality of the information having been "irretrievably lost." *Cleveland Clinic Found. v. Levin*, 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, ¶ 12-13.

### *The Denial of an Immediate Appeal Would Not Foreclose E.S. from Receiving Appropriate Relief in the Future*

{¶ 46} Under this rubric, it is evident that the effect of the trial court's order denying appointed counsel would not foreclose E.S. from receiving effective relief in the future. If the trial court rules against E.S. and allows the adoption of her children over her objection, she could appeal and raise the equal-protection and due-process claims that she advances here. If she is successful on those claims, a new adoption hearing would be in order and she would be entitled to court-appointed counsel. The right E.S. seeks to vindicate would be fully protected—if successful, she would obtain exactly what she is asking for here: an adoption hearing with representation by court-appointed counsel. This is by no means a case in which the bell cannot be unrung.

{¶ 47} In reaching a contrary conclusion, the majority never squarely addresses the standard established by our case law: whether the order, "if not immediately appealable, would foreclose appropriate relief in the future." *Bell*, 67 Ohio St.3d at 63, 616 N.E.2d 181. Instead, it notes that E.S. has a " 'fundamental liberty interest' in parenting her children," majority opinion at ¶ 9, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and points to a 1985 opinion, in which we held that the disqualification of a litigant's chosen counsel is a final, appealable order because the " ' "insurmountable burden" ' " of demonstrating prejudice after completion of the trial-court proceedings prevents effective review without an immediate appeal. Majority opinion at ¶ 10, quoting *Guccione v. Hustler Magazine, Inc.*, 17 Ohio St.3d 88, 90, 477 N.E.2d 630 (1985), quoting *Armstrong v. McAlpin*, 625 F.2d 433, 441 (2d Cir.1980).

{¶ 48} The fundamental right allegedly affected here, though, is E.S.'s right to appointed counsel, not her right to raise her children. Moreover, *Guccione* is of questionable relevance to the question in front of us. At the time *Guccione* was decided, we protected the interests underlying the final-judgment rule by defining

"special proceeding" through a test that balanced "the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable." *Amato v. Gen. Motors Corp.*, 67 Ohio St.2d 253, 258, 423 N.E.2d 452 (1981). We relied on that test in deciding *Guccione*. *Guccione* at 89-90. Subsequently, though, in *Polikoff v. Adam*, 67 Ohio St.3d 100, 616 N.E.2d 213 (1993), syllabus, we overruled *Amato*, disavowed the balancing test, and adopted a bright-line definition of "special proceeding" now embodied in R.C. 2505.02(A)(2). The same day we decided *Polikoff*, we announced in *Bell* that an order affects a substantial right only if the unavailability of immediate appeal would preclude effective relief in the future. *Bell* at 63. Remarkably, the majority doesn't even bother to mention *Bell* today.

{¶ 49} Even aside from its dubious precedential value, *Guccione* is distinguishable. The *Guccione* holding was motivated by this court's concern about the burden a litigant would face in showing prejudice, that is, that the outcome of the trial would have been different but for the erroneous disqualification of counsel. *Id*. at 90. The concern was about the difficulty in establishing prejudice from a comparison between how disqualified counsel might have performed versus how replacement counsel actually performed. *Id*. This case does not present that kind of problem, because the issue here is whether E.S. is entitled to appointed counsel at all.

{¶ 50} Indeed, the need for immediate appeal of decisions denying court-appointed counsel is belied by the facts of this case. By the time that E.S. filed her appeal, the proceeding was near its end and she had already been subject to cross-examination. The remedy that the majority awards her today—a new adoption hearing—could just as easily have been issued following a final judgment. The violence the majority does to the final-order rule is completely unnecessary.

***The Impact of the Majority Decision***

{¶ 51} The majority's resolution of the jurisdictional issue fails to consider the deleterious impact its decision will have on the final-judgment rule. The final-order rule is categorical: whether something is a final order depends not on the exigencies of a particular case, but on whether that order falls within a class of orders that has been deemed final. Here, the class consists of orders denying the appointment of court-appointed counsel. Under the precedent established by the majority today, any time a litigant requests a court-appointed attorney—whether there is any arguable merit to the claim of entitlement or not—and that request is denied, the litigant will be entitled to an immediate appeal. Thus, if a court finds that a criminal defendant fails to meet indigency requirements, the defendant can immediately appeal and the criminal proceeding must halt until the appeal is adjudicated. Similarly, a party in any civil lawsuit can ask for court-appointed counsel even if no such right has previously been thought to exist. If the request is denied, then the party can stop the proceedings and pursue an immediate appeal. Thus, by concluding that this category of decisions is immediately appealable, the majority invites many of the problems that the final-order rule is meant to avoid— piecemeal litigation, strategic delay, harassment of opponents, and premature review of trial-court decisions.

{¶ 52} One wonders what the state of the law is for final orders in Ohio following today's decision. The majority doesn't explicitly overrule the standard established in *Bell*, 67 Ohio St.3d at 63, 616 N.E.2d 181—that to affect a substantial right an order must foreclose appropriate relief in the future—but it does ignore the standard altogether. I don't envy future appellate courts and litigants who will have to try to make sense of R.C. 2505.02(B)(2)'s "affects a substantial right" requirement in the face of this court's inconsistent treatment of the provision.

{¶ 53} The majority's decision today cannot be explained by our precedent; it can only be explained by the majority's desire to immediately reach the result it

finds most efficacious. And no doubt, forcing a litigant to wait for a final order before challenging the denial of counsel can impose a hardship on that individual. But that is not sufficient justification to ignore the jurisdictional barriers. It would be " 'a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste of piecemeal litigation in every instance of temptation.' " *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), quoting *Bachowski v. Usery*, 545 F.2d 363, 373 (3d Cir.1976). Moreover, ignoring the jurisdictional requirements in those cases " 'where the merits of the dispute may attract the deep interest of the court' " will lead to " 'a lack of principled adjudication' " and " 'perhaps the ultimate devitalization of the finality rule.' " *Id.*, quoting *Bachowski* at 373-374.

### *Conclusion*

{¶ 54} Under the rule that we announced in *Bell* at 63, the court of appeals did not have jurisdiction over E.S.'s interlocutory appeal. The trial court's order refusing to appoint counsel for E.S. did not affect a substantial right because it did not foreclose appropriate relief in the future. Thus, I would vacate the decision of the court of appeals and order the appeal dismissed.

STEWART, J., concurs in the foregoing opinion.

_____

Welch Legal Services, L.L.C., and Porter R. Welch, for appellees.

Staci K. Thomas, Legal Aid Society of Columbus; and James M. Daniels, and Matthew P. Waigand, Southeastern Ohio Legal Services, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Legal Aid Society of Cleveland, Katherine Hollingsworth, Thomas Mlakar, and Joseph Tomino; McDonald Hopkins, L.L.C., R. Jeffrey Pollock, and Amy

Wojnarwsky; Legal Aid of Western Ohio, Inc., Lucinda Weller, Frank Catanzariti, Cara Williams, and Sarvani Nicolosi; Advocates for Basic Legal Equality, Inc., and Heather Hall; Legal Aid Society of Southwest Ohio, L.L.C., and John Schrider; Community Legal Aid Services, Inc., and Jennifer van Dulmen, urging reversal for amicus curiae Legal Aid Society of Cleveland, Legal Aid of Western Ohio, Inc., Legal Aid Society of Southwest Ohio, L.L.C., Advocates for Basic Legal Equality, Inc., Community Legal Aid Services, Inc., National Coalition for a Civil Right to Counsel, and National Association of Counsel for Children.

––––––––––––––